Monongahela Navigation Company *v*. John A. Wood and Samuel L. Wood, trading as John A. Wood & Son., Appellants.

*Payment—Recovery of illegal payment of tolls—Protest—Notice—Navigation company—Shippers of coal.*

Shippers of coal cannot recover from a navigation company tolls illegally collected, nor can such payments be set off by them in an action brought by the navigation company to collect unpaid tolls, where there is no evidence to show that, either when the tolls were paid or at any other time, notice was served upon the navigation company that the shippers would demand repayment of the excessive amount paid.

Argued Oct. 24, 1899. Appeal, No. 55, Oct. T., 1899, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1897, No. 585, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Affirmed.

Assumpsit to recover tolls. Before McCLUNG, J.

At the trial the defendants disputed the amount demanded, because the rates charged were unreasonable, and sought to set off certain payments of other tolls which they alleged were unreasonable, excessive and illegal, and which they also alleged had not been voluntarily paid by them.

The court charged as follows:

These cases, nine of which have been tried together, would seem to present matters of considerable complication to a jury, but under the very accommodating and lawyerlike way in which counsel all round have agreed to try the cases and to present them, I think the complications have been largely done away with.

There are a number of questions which arise here, but they are mostly questions of law, and I think it is the duty of the court to relieve you from most of the troubles in the case. As you understand, the shippers of coal through the locks of the Monongahela Navigation Company object to the rate which they were charged for run of mine coal. The company had

fixed by resolution, and put upon their schedule, a certain rate
for coal, and a half rate for slack.    After that, the parties got
to shipping run of mine coal, which, it is practically conceded,
consists of about sixty per cent coal and forty per cent slack.
The company did not put upon their schedule a rate for this
run of mine coal, but instead, charged as if it was lump coal;
that is, they charged the full rate for it.    You will perceive
that, if they made a rate which would, in the long run, compel
shippers to pay the full rate for coal and the half rate for slack,
then the rate upon the run of mine coal would be eighty per
cent of the full coal rate; that is, you would reduce one fifth
the rate which is charged here.    [Under this contention, as-
suming that you would find that the reasonable rate was this
eighty per cent, instead of the one hundred per cent of the coal
rate, two questions arise: One, as to the right of these shippers
to recover back that which has already been paid; the other, as
to the right to defend upon the tolls which are not yet paid,
and that are now sued for.    I instruct you that under the evi-
dence in this case they cannot recover back that which has been
paid.] [1]    It is not necessary for me to confuse the matter by
explaining at length the reason.    You, probably, so far as you
are interested, have learned the reasons from the discussions
which have taken place on the questions of law.    [There can
be no recovery then in any of those cases where the shippers
appear as plaintiffs.    I believe there are only two of those cases.
In those two cases you will render verdicts for the defend-
ants.] [2] [When you come to the other cases, the cases where
the Monongahela Navigation Company is the plaintiff, then,
outside of a matter that is involved in the case of the naviga-
tion company against Wood & Son you have simply to deter-
mine whether or not you will deduct anything from the claim
of the Monongahela Navigation Company against these parties.
As I understand it, it is practically conceded here by both par-
ties that if you undertake to modify this rate, then the fair
thing would be to reduce it twenty per cent, that is, take off
one fifth for the lockage on run of mine coal.    All of the bill
charged for is for lockage on run of mine coal, you understand,
and the statements which will be sent out with you will show
how much the excess is, how much the twenty per cent would
amount to in each case; so that you will simply, if you find

that the charge is unreasonable, deduct that amount and render your verdict for the balance in favor of the Monongahela Navigation Company,] [3] except that in the case of Mr. Wood, if you would find that there was a mistake made in the gauging, then that mistake should be corrected, and he should be credited with the overcharge. The statement will also show that.

Now when you come to this question of whether this charge was reasonable, or not, you haven't very much evidence. In the nature of the case, you probably could not have. It might be competent enough, if it was practicable, to go into the question of the amount of the dividends, and the expenses of this company; but that has not been gone into, could not, in the nature of things, be well gone into, in a case like this; the trouble would more than eat up all there was in it. But you have on the one side, in favor of the shippers, the fact that this run of mine coal is forty per cent slack and sixty per cent coal, and that the charge upon coal is the full rate charged here, and the charge upon slack only the half rate; so that, if the idea is to get so much for slack and so much for coal, then it would be proper to charge only eighty per cent; that is, to that extent, the fixing of these rates indicates that as a reasonable charge for this run of mine coal. On the other hand, you have the contention of the company that it was difficult to determine just what proportions there was in this coal, and that their only safety was to charge the full coal rate; and the fact that for a number of years these parties seemed to have submitted to it.

In matters of this sort we frequently appeal to market rates to determine what is reasonable, that is, upon the assumption that what people are willing generally to pay for a thing is the fair price of it. In a case like this there can be no market rate. The only parties dealt with are these parties who shipped, and upon the same principle, however, their acquiescence in a rate indicates its reasonableness, and their acquiescence for a long time would probably indicate it very strongly. But you have the reasons for the acquiescence here, and you will take into account the whole matter, and determine whether it was a reasonable rate to charge this full coal rate, or whether the reasonable rate would be one fifth off, so far as run of mine coal is concerned. You will be able, when you have the statements, as you find that fact, to render your verdicts; and then, in the

Wood's case, you will take into account the question of the alleged mistake. Mr. Wood says there is a mistake there amounting to hundreds of dollars, that he had overpaid by reason of an error in the gauging  Now, of course, we have no direct evidence here as to the correctness of the gauging, except that it seems, probably, to have been returned. We are not informed just as to how they found the amount in a barge when they came to a lock.

Mr. Shaw: It is admitted that the amount is $439.86, if we are entitled to recover, if there is that error.

The Court: But it is for the jury to say whether there was an error at all.

Mr. Shaw: No, it is admitted that there was an error, but the question is submitted to you whether we may recover after having paid it in ignorance of the fact.

The Court, continuing: Then there will be no trouble about that, because, if there was a mistake, unquestionably the defendant is entitled to recover. If a party is passing through a lock, and there is a mutual mistake made by his employees and the lock keeper as to the amount of the tolls, and he, by mistake, overpays him, then he ought to be entitled to recover it, or ought to be entitled to credit it upon future tolls. It is simply a case of a man buying something, and by mistake paying more than its price. The party who receives it ought to pay it back, or ought to credit it upon future indebtedness. So that, in that case, you will credit Mr. Wood with that amount.

[Now, gentlemen, you will have a statement of the amount of tolls in each case which the company claims. You will have a statement as to how much twenty per cent reduction upon the run of mine coal would reduce that. If you believe that the full rate was a reasonable rate, you pay no attention to the amount of that reduction. If you believe, however, that it was unreasonable, and that the company should not have charged more than the eighty per cent rate, then you simply reduce the amount claimed by that twenty per cent, and render a verdict for that amount] [4] except in the Wood case where you also credit him with the amount overpaid by mistake.

The jury reduced the plaintiff's claim by deducting excessive charges on the unpaid tolls.

Verdict and judgment for plaintiff for $3,655.48.   Defendants appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*M. W. Acheson, Jr.,* and *Henry A. Davis,* with them *George C. Wilson, H. & G. C. Burgwin, Wm. M. Galbraith, P. C. Knox, James H. Reed, George E. Shaw* and *A. P. Burgwin,* for appellants.—Whether the illegal tolls exacted on the slack in the run of mine were paid voluntarily or under duress was a question of fact which, under the evidence, should have been submitted to the jury : Baker v. Cincinnati, 11 Ohio, 534 ; Beckwith v. Frisbie & Sons, 32 Vt. 559 ; Parker v. Great Western Ry. Co., 7 M. & G. 253 ; Mobile, etc., Ry. Co. v. Steiner, 61 Ala. 559 ; McGregor v. Erie Ry. Co., 55 N. J. L. 89.

The fact that the shippers paid these charges monthly does not make them voluntary: LaFayette, etc., R. R. Co. v. Pattison, 41 Indiana, 312 ; Mobile, etc., Ry. Co. v. Steiner, 61 Ala. 559 ; Peters v. R. R. Co., 42 Ohio, 275 ; Chicago & Alton R. R. Co. v. Coal Co., 79 Ill. 121 ; West Virginia Transportation Co. v. Sweetzer, 25 W. Va. 434 ; Steele v. Williams, 8 Exch. Rep. 625.

Evidence of express refusal of lockage was not necessary: McGregor v. Erie Ry. Co., 35 N. J. L. 89 ; Swift Co. v. United States, 111 U. S. 22 ; LaFayette, etc., R. R. Co. v. Pattison, 41 Ind. 312 ; Mobile, etc., Ry. Co. v. Steiner, 61 Ala. 559 ; Peters v. R. R. Co., 42 Ohio, 275.

Actual protest was not essential to recovery : Taylor v. Board of Health, 31 Pa. 73 ; American Steamship Co. v. Young, 89 Pa. 186 ; McGregor v. Erie Ry. Co., 35 N. J. L. 89 ; Mobile, etc., Ry. Co. v. Steiner, 61 Ala. 559 ; De La Cuesta v. Ins. Co., 136 Pa. 62 ; Swift Co. v. U. S., 111 U. S. 22 ; R. R. Co. v. Coal Co., 79 Ill. 121 ; Transportation Co. v. Sweetzer, 25 W. Va. 434 ; Lehigh Coal & Navigation Co. v. Brown, 100 Pa. 338.

Whether the period covered by these involuntary payments showed consent was a matter for the jury to determine : R. R. Co. v. Lockwood, 17 Wall. 379 ; Swift Co. v. United States, 111 U. S. 22 ; Chicago & Alton R. R. Co. v. Coal Co., 79 Ill. 121 ; Peters v. R. R. Co., 42 Ohio, 275 ; American Steamship Co. v. Young, 89 Pa. 186.

*T. D. Carnahan*, for appellee.—Notice of an intention to reclaim the money paid was necessary: Borough of Allentown v. Saeger, 20 Pa. 421; Hospital v. Philadelphia County, 24 Pa. 229; Taylor v. Board of Health, 31 Pa. 73; McCrickart v. Pittsburg, 88 Pa. 133; Motz v. Mitchell, 91 Pa. 114; De La Cuesta v. Ins. Co., 136 Pa. 62; Union Ins. Co. v. Allegheny, 101 Pa. 250; Peebles v. Pittsburg, 101 Pa. 304; Shane v. City of St. Paul, 10 Reporter, 368; Harvey v. Girard National Bank, 119 Pa. 212; Neely's App., 124 Pa. 406; Reed v. Horn, 143 Pa. 323.

OPINION BY MR. JUSTICE BROWN, December 30, 1899:

The appellants insist that they ought to recover back excessive tolls collected from them by the appellee, and their right to do so depends upon the facts developed on the trial. It seems that for a number of years the Monongahela Navigation Company, under its corporate power to charge and receive "such rates of toll and charges as shall be just and reasonable," had adopted a schedule for coal and slack, the rate for the latter being one half of that charged for the former. Some years ago the shippers—among them the appellants—began to ship the coal as it came from the mine, forming one mass and known as run of mine coal, which had previously been separated into coal and slack. Upon such shipments the Monongahela Navigation Company charged the full coal rate, and the shippers, alleging and having shown on the trial that two fifths of the run of mine coal was slack, insisted that they ought to be charged for it one half of the rate fixed for coal, or for the whole shipment but four fifths of the coal rate. A number of cases were tried together, five in which the Monongahela Navigation Company was plaintiff seeking to recover unpaid tolls, and two in which the shippers, as plaintiffs, sought to recover back excessive charges paid. The specifications of error involve but the single question of the right of the shippers to recover back excessive tolls collected from them, and we have reviewed all the testimony taken on the joint trial in considering and determining whether any error was committed by the learned trial judge in his instructions to the jury, which alone are assigned as error. These instructions were that the shippers could not recover back the tolls alleged to have been illegally paid, either in a

suit brought by them or by way of set-off in proceedings against them.

The jury found that the tolls charged were unreasonable, and so far as they had not been paid, proper allowance was made to the shippers in each case.   Ought they to recover back what they had paid?   This depends upon the conditions under which the tolls or charges were paid.   The appellants in every instance claimed the tolls as a matter of right.   It is true that complaint was made from time to time that the charges were excessive and discriminating, and that other rates ought to be fixed.   Disputes were continuous over the tolls exacted, and demands were made for modifications, but in every instance the company insisted upon its right to demand and receive what was paid, and no notice was ever given at the time of payment that the rates charged were illegal and that they were involuntarily paid.   In Peebles v. City of Pittsburg, 101 Pa. 304, our Brother GREEN held that "where there is compulsion, actual, present, potential in inducing payment by force of process available for instant seizure of person or property, and the demand is really illegal, then the party by giving notice of the illegality and of his involuntary payment can recover back the money so paid in an action brought for that purpose."   This in express terms was reaffirmed in Harvey v. Girard National Bank, 119 Pa. 212.   If the shippers had insisted that illegal tolls were being exacted from them, as the jury subsequently found, and that they paid the same involuntarily, under protest, for the purpose of having their coal pass through the locks, they could have recovered any excess paid.   In protesting, some notice ought to have been given, formal or informal, that the amount paid would be reclaimed.   We have failed to discover that in any case, either when the tolls were paid or at any other time, notice was served upon the company that the shipper would demand repayment of the excessive amount paid.   As we have not been persuaded that there is any error in the instructions complained of, but, on the other hand, after a careful review of all the testimony, feel that what was said to the jury was proper, all the assignments of error are overruled and the judgment is affirmed.