## Philadelphia Electric Company, Appellant, *v.* Public Service Commission et al.

Argued January 16, 1934. Before FRAZER, C. J., SIMPSON, MAXEY, DREW and LINN, JJ.

*Frank M. Hunter* and *William Clarke Mason,* with them *George Ross Hull,* for appellant.

*John Fox Weiss,* with him *Paul H. Rhoads, Samuel G. Miller* and *E. Everett Mather, Jr.,* for public service commission.

*Joseph Sharfsin,* for intervening appellees.

*Isaac Hassler,* amicus curiæ, for appellees.

OPINION BY MR. JUSTICE SIMPSON, March 19, 1934:

Philadelphia Electric Company, appellant herein, filed with the public service commission, new schedules, so prepared as to operate throughout its entire service territory, the rates specified therein being intended to apply to practically every one of its customers. It then gave to the commission and to the public a notice thereof as required by article II, section 1, clause (f) of the Public Service Company Law of July 26, 1913, P. L. 1374, 1379. In the notice it stated that, in most respects and in its general result, the income which it would receive would be decreased, but that "In the application of the rates as revised, a limited number of bills will be unavoidably increased. The practice of supplying free lamp renewals is discontinued." Why "a limited number of bills [or any of them] will be *unavoidably increased,*" in tariffs intended, as appellant claims, to result in a general decrease of its rates, is not stated on this record; evidently this is a mere matter of opinion.

Complaints against the proposed new rates were filed with the commission before the effective date thereof, by certain users and consumers of the service and power furnished by the company; to them the company filed answers, and the new schedules, complaints and answers were then referred by the commission to one of its number to take testimony and report. At the first meeting before the sitting commissioner a question arose as to whether the company or the complainants had the burden of proof upon the issues to be decided. Article V, section 4, of the act (P. L. 1913, page 1404) provides that "At any such hearing [regarding a proposed change of rates] involving *any proposed increase in any rate,* the burden of proof to show that such increased rate is just and reasonable shall be upon the public service company." Contending that this provision did not apply where, as here, their notice of the proposed new rates averred that the net result of all the changes would be a decrease in the total revenue it would receive, the company claimed that complainants had to carry the burden. This contention the sitting commissioner sustained; but complainants excepted thereto, and the matter was then heard by the commission itself, as required by article IV, section 4, of the statute (P. L. 1913, page 1397), and it decided "that the burden of proof rested on the [company] in so far as the increases [were] admitted by [it] in its general and division notices relative to its tariffs......particularly the increases resulting from the application of schedule R L P in said tariffs...... and also in so far as any and all other prima facie increases which may be shown by the complainants were concerned; and approved and confirmed the said ruling of the sitting commissioner in all other respects."

Under the supposed authority of article VI, section 31, of the statute (P. L. 1913, page 1429), the company thereupon filed a bill in equity in the Court of Common Pleas of Dauphin County, seeking to enjoin the commission from enforcing its order as above, and to stay pro-

ceedings in the matter until the further order of the court. After a full hearing the court dismissed the bill at the cost of the company, and from that decree the present appeal was taken. The decree must be affirmed for two reasons: 1st. The order of the commission was a proper one. 2d. Even if our conclusion was otherwise, the bill would nevertheless have to be dismissed.

The company's contention would seem to be that, since article II, section 1, clause (f), (P. L. 1913, page 1379) states that its notice to the public of a proposed "change in any tariff or schedule......shall plainly state the exact changes proposed to be made in the tariffs or schedules then in force, and whether [it results in] an increase or decrease," this must be interpreted to mean that the company's ex parte allegation, as to the net result of all the changes, is the determinative factor, and that the commission is powerless even to inquire into the fact, when considering who has the burden of proof on the hearing of complaints, against proposed new rates filed with it before the effective date of a proposed change of rates. To this we do not agree. We know of no instance, and appellant has pointed us to none, wherein a judicial, quasi judicial or administrative trial tribunal has been so treated, nor where one of the contestants has been so handicapped. Such a conclusion antagonizes our sense of fair play, and will never be accepted unless no other is reasonably possible, which is not the case here. If the legislature had so intended it would have been easy to so state, but this it has not done. It seems clear to us, that the clause *"any proposed increase in any rate"* itself negatives such a conclusion. Under it, a question of fact is raised, to be determined preliminarily by the commission, when a schedule of new rates has been filed and has been duly and promptly objected to. This is evident also from the whole tenor and effect of the statute, otherwise the public,—because of the great expense to an objector, who is not interested in all the rates,—would be deprived, in many if not most cases, of

a determination of the fact of increase, because no customer could afford to contest this matter, consequently the equity and justice of the proposed new rates would rarely be reviewed. We therefore now decide that the regulatory power of the commission, to determine the validity of proposed new rates, when objections have been filed in time, includes the right to determine which of the litigants will be required, in the first instance, to produce his proof regarding the disputed questions to be determined by it.

We hear too much of the one-sided argument that "The Public Service Company Law was legislatively conceived and intended as a comprehensive scheme of rate regulation in which saving to the utility of needless expense of litigation was one of its dominant fundamentals." It was, of course, hoped and believed that "needless expense of litigation" would be saved to every one interested, but its "dominant fundamental" was and is that justice shall be done to all concerned, the utility and its customer alike, and that the customer shall not be dominated or delayed by the greater power or influence of the utility, as history showed had all too frequently happened prior to its enactment. Nor should the utility be harassed by unfounded complaints on the part of its customers. Where complaints against rates are filed before the effective date of the proposed new tariff, it is the duty of the commission to guard against placing the "great and unnecessary expense," to which appellant so plaintively refers, on the consumer who in practically all cases is least able to bear it. Nor can we shut our eyes to the fact that appellant must have had the aid of departmental experts in preparing its schedules and tariffs, especially in determining whether or not they resulted in an increase or decrease of rates, whom it can more readily produce at less expense, than can complainants, who are not in so favorable a situation.

It is not our purpose to further consider this reason for affirming the decree below, since the second is the

more important, and is wholly free from doubt. We supposed that when we decided Citizens Passenger Ry. Co. v. The Pub. Ser. Com., 271 Pa. 39, we had definitely settled this point. We still think so. We there said at page 61: "It is impossible of belief that the legislature intended to give to the Superior Court either the power or duty to thus direct the commission in purely procedural matters (over which by article V, section 26, the commission itself is given full authority), or to make it possible to have delays which would effectually destroy one of the most important reasons for the passage of the act. Yet these conclusions are inevitable unless the one reached in this opinion is adopted. It is no answer to say that this order, if within the commission's jurisdiction, involves a valuation and will entail an unnecessary expense, if it ultimately appears the contention of the utility company must be sustained; not only because this is a legislative and not a judicial matter and a like situation may exist in every rate case, but also because the same thing might be said of every order, however trivial, the difference being, at most, one of degree and not in kind, a difference which the law does not consider, unless it is expressly so provided by statute: Easton Transit Co.'s Petition, 270 Pa. 136. Besides, this complaint might be made by any respondent in any litigated proceeding; it is inherent in our system of government by law...... Moreover, it is quite probable that, if appeals from interlocutory orders were permitted whenever the public service company chose to take them, the expense, in the long run, would be as great or greater than by limiting them as herein specified; and certainly to allow them in trivial or procedural matters would burden the courts with numerous appeals, would drag the proceedings to an inordinate length, and, as already suggested, would give to companies, willing to risk any expense in order to tire out a complainant, an opportunity to defeat the purpose of the statute."

It is well said in 3 Pond on Public Utilities (4th edition), section 931: "For the commission to be most efficient and of the greatest practical value, many of its orders and regulations issued after due investigation should become and remain effective with the final disposition of the commission. The necessary delay attending reviews by the courts and their lack of time and opportunity for investigating situations at first hand and as current operating concerns constitute at once the occasion and the chief reason for commission control. Suspending their orders, pending appeals and while the same are being reviewed by the different courts, interferes materially with the effectiveness of the commission, detracts from the validity of its action and often postpones indefinitely the enjoyment of the results of its investigations and findings."

In a vain attempt to meet a part of the above conclusion, the company says in its brief: "It is not the position of appellant that when once gotten under way, and after production of testimony on the merits of the case has been begun, commission hearings can be interrupted at will by resorts to the Dauphin County Court for a review of every ruling or determination of a sitting commissioner during the progress of the case." When challenged at bar to point to any language of the statute which might be construed as showing that there was any distinction as to procedural matters before or after the production of testimony had begun, its learned counsel pointed to none. There is none. It is not in point to say: "It is not the position of appellant that when once gotten under way...... commission hearings can be interrupted"; perhaps that is not its present position, but we cannot overlook the fact that such may be its or some other utility's position in the next or some future case before the commission. The only way to treat such an unjustifiable contention is to totally destroy it—so far as this can be done—as soon as it appears.

Appellant seems to find some comfort in the latter part of its quotation from the Citizens Passenger Railway Case (271 Pa. 53), viz.: "In accordance, therefore, with the principle that the methods provided by established practice will be followed, unless the new statute, being interpreted, declares otherwise, and, if it does, will be modified only to the extent indicated therein, we find no difficulty in concluding that, so far as rates, service and facilities are concerned, no appeal will lie under section 17, except from an order of the commission dismissing the complaint or requiring the respondent to satisfy it in whole or in part; while under section 31, if, *for jurisdictional reasons,* affecting the parties or the subject-matter complained of, the commission or a commissioner is exceeding the powers given by the statute, an injunction may be granted, thereby once and for all disposing of the question thus raised." We still adhere to that statement. It says that *"for jurisdictional reasons,* affecting the parties or the subject-matter," that question may be decided in limine, just as is provided by the Act of March 5, 1925, P. L. 23, in ordinary actions. Under no other circumstances can this question be thus raised. Here, admittedly, the commission has full jurisdiction of the parties and the subject-matter. Hence, section 31 does not apply, and again "we find no difficulty in concluding that so far as rates......are concerned [which is the present situation] no appeal will lie under section 17, except from an order of the commission dismissing the complaint or requiring the respondent to satisfy it in whole or in part."

We, therefore, decide that, in cases like the present, the commission has the power from the inception of the proceedings to direct the procedure before it, which should conform, as nearly as may be, to that of judicial proceedings; that no appeal will lie from its rulings, before final decree, unless the jurisdiction of the commission over the parties before it, or of the subject-matter being considered, is challenged, and that these latter

questions cannot arise where, as here, the party is a public service company, and the subject-matter being considered are complaints as to its proposed new rates, service or facilities.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellant.