Allegheny Steel Company *v.* New York Central Railroad Company et al., Appellants.

United Engineering & Foundry Company *v.* Same.

Union Steel Casting Company *v.* Same.

United Engineering & Foundry Company *v.* Erie Railroad Company et al., Appellants.

354

Argued September 30, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*C. E. Brockway*, of *Brockway, Whitla & McKay*, with him *Guernsey Orcutt, W. T. Pearson, Leo P. Day, Charles Matthews, Jr.*, and *Osmer & Osmer*, for appellants.

*R. R. Goehring*, with him *W. W. Collin*, of *Patterson, Goehring, McClintock & Collin*, and *T. A. Sampson*, of *Stranahan & Sampson*, for appellees.

OPINION BY MR. JUSTICE LINN, November 23, 1936:

These appeals are from judgments for plaintiffs in suits to recover reparation awards made by the Public Service Commission. Jury trial was waived. The cases were tried together and were argued here on a consolidated record and will therefore be disposed of in one opinion.

In proceedings complaining that certain intra-state rates on sand in open cars were unreasonable, the commission, August 12, 1930, sustained the complaints and ordered reductions for the future to the level of the Davison scale.[1] Tariffs were filed in accord with the order.

Thereafter by complaints filed December 19, 1930, and January 6, 1931, averring the exaction of unreasonable rates during the two preceding years, the commission was asked to determine what would have been reasonable rates during those periods and to award reparation for the overcharge paid by complainants. The complaints were sustained April 5, 1932,[2] in the following finding and order: "Upon all of the facts of record we conclude and find that the rates charged by the respondents for the transportation of sand in open-top cars, in carloads, were unreasonable as follows:

"The rate of $1.39 from Schollard to Homestead to the extent that it exceeded 90 cents, the rate of $1.76 from Polk to Pittsburgh to the extent that it exceeded $1.20, the rate of $1.76 from Utica and Polk to Homestead to

---

[1] The proceedings are reported as *Industrial Silica Corp. v. Railroads*, 10 Pa. Pub. Ser. Com. Rep. 426. The Davison scale had been established in an earlier proceeding: 8 Pa. Pub. Ser. Com. Rep. 658.

[2] Reported as *Mesta Machine Co. v. R. R. Co.*, 11 Pa. Pub. Ser. Com. Rep. 294.

the extent that it exceeded $1.30, the rate of $1.76 from Utica to Glassport and Polk to Vandergrift to the extent that it exceeded $1.40, and the rate of $1.80 from Utica to Vandergrift to the extent that it exceeded $1.40, all for the period since December 19, 1928; the rate of $1.76 from Polk to Brackenridge to the extent that it exceeded $1.40, and the rate of $1.80 from Utica to Brackenridge to the extent that it exceeded $1.40, for the period since January 6, 1929; therefore, now, to wit, April 5, 1932, it is ordered: That the complaints be and are hereby sustained." The railroads took no appeal from that order.

The effect of the order of the commission was to determine that appellants had exacted more than reasonable rates and that they were not entitled to retain the excess but, on the contrary, were obliged to refund it. Their records showed the amounts received and from whom; as to them there is no dispute. Such payment is evidence of damage sustained: *Southern Pac. Ry. Co. v. Darnell-Taenzer Co.*, 245 U. S. 531. Not receiving payment of the excess, the appellees, pursuant to article V, section 5 of the Public Service Company Law (Act of July 26, 1913, P. L. 1374, 66 PS section 1, et seq., as amended), asked for orders of reparation directing payment by the railroads to petitioners (in the words of the statute) "of the amount of damages sustained in consequence of said unjust, unreasonable or unlawful collections". Hearings were had and reparation awards were made April 18, 1933. When the awards were not paid, these actions were brought in accordance with provisions of article V, section 5, to recover the sums awarded. Section 5 also provides that "said order [of reparation] made by the Commission shall be prima facie evidence of the facts therein stated and that the amount awarded is justly due the plaintiff in each suit, and the defendant public service company shall not be permitted to avail itself of the defense that the service was, in fact, rendered to the plaintiff at the rate contained in its tariff or

schedule in force at the time the payment was made and received."

The scope of our inquiry is suggested in the following quotation from appellants' brief stating the position of the learned court below as it is challenged by appellants: "The Court accordingly, refused to consider the questions whether the rates were, in fact unreasonable; whether the limitation contained in the Public Service Act barred the suits; whether the orders of reparation sought to be enforced violated the long and short haul provisions of that Act and of the state constitution; or whether the enforcement of the orders would unduly prejudice other shippers."[3]

As the objection dealing with limitation is in a different class from the other three, it will be dealt with first. Section 5 also provides: "No reparation as herein provided shall be awarded by the commission unless the complaint or petition shall have been filed with it within two years from the time when the cause of action accrued. . . ." The cause of action accrued when the freight charges were paid: *Louisville Cement Co. v. I. C. C.*, 246 U. S. 638. The argument is that "the complaint or petition" was not filed "within two years from the time when the cause of action accrued." The question then is what is meant by the words "complaint or petition"? Do they refer, as appellants contend, to a petition (the third one recited above) by which a shipper calls the commission's attention to its findings that unlawful charges were collected and that the overcharge has not been refunded and for which the shipper asks an order of repayment, or do the words refer, as appellees contend, to the complaint or petition (the second one recited above) challenging as unreasonable, the collected rates?[4] We all agree that the words refer, as appellees

---

[3] We do not find this defense of undue prejudice raised in the affidavits of defense.

[4] Section 5 of article V, provides: "If, after hearing, upon complaint or upon its own motion, the commission shall determine that

contend, to the initial proceeding challenging the rates, whether brought by a shipper or a body representing shippers generally or instituted by the commission of its own motion. The record gives no support for the defense that the cause of action accrued more than two years before complaints filed December 19, 1930, and January 6, 1931, respectively; no allowance in damages was made for rates paid prior to two-year periods expiring December 19, 1930, and January 6, 1931. It is therefore immaterial, in disposing of these appeals, that the learned trial judge ruled (erroneously, we think) that this defense was not available at the trial; there was no evidence that earlier payments were included in the reparation awarded.

Turning now to the other objections, it will be noticed that the first is that the court refused to admit evidence that the rates in fact were not unreasonable as the commission had found them to be. The Public Service Company Law conferred exclusive jurisdiction on the commission to determine the unreasonableness of rates. One of the purposes of conferring this jurisdiction was to provide for uniformity of rates and practices and that the standard of what is reasonable might not vary with the views of different courts or different juries to whom isolated cases might be presented. See *Leiper v. Baltimore & P. R. R.*, 262 Pa. 328, 331, 105 A. 551; *Texas & Pac. Ry. v. Abilene Cotton Oil Co.*, 204 U. S. 426, 439; *Centre Co. Lime Co. v. Pub. Ser. Com.*, 96 Pa. Superior Ct. 590, 602; *Mitchell Coal Co. v. P. R. R. Co.*, 230 U. S. 247, 255 et seq. This jurisdiction took the place of that

---

any rates which have been collected . . . by any public service company complained of, . . . were unjust and unreasonable . . . the commission shall, upon petition, have the power and authority to make an order for reparation, awarding and directing the payment to any such complainant, petitioner, within a reasonable time specified in the order, of the amount of damages sustained in consequence of said unjust, unreasonable, or unlawful collections . . . : Provided, That such damages have been actually sustained by such complainant petitioner."

formerly existing in the common pleas: cf. *Monongahela Navigation Co. v. Wood,* 194 Pa. 47, 45 A. 73. The learned court below was therefore correct in excluding evidence for the purpose suggested. The statute deprived the defendants of no rights. The effect of the finding and determination in the order of April 5, 1932, was to determine that the railroads had committed a tort and the obligation to make compensation. We think it was appealable[5] under article VI, section 17: *New York & Pa. Co. v. New York Central R. R. Co.,* 267 Pa. 64, 110 A. 286;[6] *Citizens Passenger Ry. v. Public Service Commission,* 271 Pa. 39, 48 et seq., 114 A. 642. Any other conclusion would lead to such anomalous results that we think the legislature cannot have intended them. If we should adopt appellants' argument that the order was not appealable, the result would be that the same defenses could be interposed in the common pleas in the action for reparation; that procedure would require trying the case de novo and again hearing the evidence which the commission had heard and passed on, and it would have to be done as many times as there were claimants bringing suits for reparation. We are certain the legislature did not mean this. Another reason for holding that the legislature intended such orders to be appealable lies in the requirement of judicial review; it is conceivable, for example, that the commission might find a rate to be reasonable which the railroads would be able to show was confiscatory. To meet that contingency due process requires a right of judicial review: *Ohio Valley Co. v. Ben Avon Borough,* 253 U. S. 287 and cases

---

[5] "Section 17: 'Within thirty days after filing of any finding or determination by the commission, or after the date of service of any order . . . any party to the proceedings affected thereby may appeal therefrom to the Superior Court: Provided, That there shall be no appeal from any order for reparation made by the commission, but the suit may be brought as hereinbefore provided.'"

[6] Earlier stages of this proceeding may be seen in 3 Pa. Pub. Ser. Com. Rep. 41 and 533.

following it. The legislature intended to pass an act that was constitutional and not one that was unconstitutional. The order finding the rates unreasonable in the amounts specified was a declaration to which the law annexed the obligation to refund the overcharge.[7] It is immaterial, in this connection, that the statute also provided for a determination of the amount and for suit in the common pleas to recover it if the defendant failed to discharge the obligation. The right of appeal from the order declaring the rate unreasonable gave opportunity to appeal to the Superior Court for judicial review; from that court an appeal lay to this court, and from this court to the Supreme Court of the United States.

The effect of not taking advantage of the opportunity to appeal is specified in article VI, section 31, which provides: "Whenever the commission shall make any rule, regulation, finding, determination, or order under the provisions of this act the same shall be and remain conclusive upon all parties affected thereby unless set aside, annulled, or modified in an appeal or proceeding taken as provided in this act." Having elected to reject the judicial review provided by the statute, appellants are bound by the finding of the commission that the rates were unreasonable in the amounts of the rate reductions specified. Under the same section, and for the same reasons, the defenses that the reparation orders would violate the long- and short-haul provisions and would unduly prejudice other shippers were not available in these suits to enforce the orders. The reasonableness of the rates, their relation to the long- and short-haul[8] provisions as disclosed by these records, the alleged undue prejudice to other shippers, are questions that have to do

---

[7] See *Arizona Grocery v. Atchison Ry. Co.*, 284 U. S. 370, 383 et seq.

[8] This defense was interposed in only two of the cases, Nos. 69 and 70. The cases arose prior to the Act of December 11, 1933, P. L. 69, Special Session 1933-1934; see amendment to Constitution, page 341, Special Session 1933-1934.

essentially with general rate regulation which, to attain uniformity, the statute expressly confided to the exclusive jurisdiction of the commission. If the railroads' tariffs disclosed violation of the long- and short-haul provisions, penalties may have been incurred, a subject which is not before us: Compare *Davis v. Portland Seed Co.*, 264 U. S. 403. The record does not present a case within the rule applied in *Com. v. Central R. R. of N. J.*, 308 Pa. 274, 162 A. 311.

While section 5 of article V quoted above prescribes that the order of reparation "shall be prima facie evidence of the facts therein stated and that the amount awarded is justly due to the plaintiff" etc., it merely declares a rule of evidence, and does not deprive the defendant of the right to put in any defense to an action on the reparation award (cf. *Meeker v. Lehigh Valley R. R. Co.*, 236 U. S. 412; *Penna. R. R. Co. v. Jacoby*, 242 U. S. 89; *Mitchell Coal Co. v. Penna. R. R. Co.*, 230 U. S. 247; *Mills v. L. V. R. R. Co.*, 238 U. S. 473; *Spiller v. R. R. Co.*, 253 U. S. 117) except that specifically prohibited (payment of the tariff rate), and those resulting from other provisions of the act designed to accomplish the administration of uniform rates and practices. The defense that the rate was not unreasonable was therefore not open in these actions, nor, for the same reason, could the railroad show that the reduced rate would result in undue preference. It is, however, open to the carrier to show that the commission included in the amounts of the reparation order sums exacted outside the two-year period. As has been said, the evidence in this case shows that payments in question were all within the two years, so the appellants were not harmed by the rulings that the defense was not available in these suits; if there had been evidence to support it, the evidence would have been admissible.

As no federal question is raised for review in the statement of questions involved (see Rule 50) we need not

set forth why *New York Central R. R. Co. v. New York & Penna. Co.*, 271 U. S. 124, is inapplicable.

Judgments affirmed.