Bell Telephone Company of Pennsylvania, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued November 19, 1937.

Before KELLER, P. J., CUN-
NINGHAM, STADTFELD, PARKER, JAMES and RHODES, JJ.

*E. Everett Mather, Jr.,* with him *William H. Lamb,*
for appellant.

*Harry H. Frank,* with him *Edward Knuff,* for ap-
pellee.

OPINION BY CUNNINGHAM, J., March 18, 1938:

The Bell Telephone Company of Pennsylvania has
appealed from an order of the Public Service Commis-
sion (now Public Utility Commission) reading: "Now,
to wit, December 8, 1936, it is ordered: That the Bell
Telephone Company of Pennsylvania, respondent, pay
to Dr. Caroline M. White, within fifteen (15) days from
date of service hereof, the sum of $91.50, with simple
interest at the rate of 6% per annum upon the indi-
vidual amounts comprising the said sum of $91.50 from

the several dates of payment thereof to the date of repayment."

Appellant contends this order is not in conformity with law for various reasons which will be stated and considered as we proceed. The commission did not award the reparation specified in the order because any of appellant's published rates were unjust or unreasonable, in and of themselves, but upon the ground that appellant, in violation of Article III, Section 8, of The Public Service Company Law of July 26, 1913, P. L. 1374, 66 PS §262, had charged Dr. White for the telephone service rendered her a greater sum than it charged certain other persons "for a like and contemporaneous service under substantially similar circumstances and conditions."

The proceedings which culminated in the order appealed from began before the commission in July 1935. At that time, and at least since September 1932, appellant's tariffs for the City of Harrisburg contained a business rate of $6.00 per month and a residence rate of $3.00 per month for a two-party line service. The following applicable regulation was a part of the tariff:

"The primary and/or dominant use of the service by the subscriber is the criterion by which to determine whether residence or business rates apply. ......

"(b) Residence rates apply in the office of a physician, surgeon, nurse, dentist, veterinary surgeon, osteopath, chiropractor, or Christian Science practitioner, located in the subscriber's residence, where such office is not part of an office building, and all telephones are in locations which are part of the subscriber's domestic establishment and the number of each telephone is listed in connection with an individual name. In such cases, the subscriber's profession may be indicated after his name in the telephone directory."

Caroline M. White, residing, and having her office, at 902 North Second Street, Harrisburg, held a license

from the State Board of Medical Education and Licensure as a physiotherapist and engaged in the practice of electro-therapy, a branch of physiotherapy.

Since December of 1928 or January of 1929 she had subscribed to appellant's telephone service at that number and street, paying the business rate of $6.00 per month. Although physiotherapists were not included in the classes of "practitioners" designated in the above quoted regulation as being entitled, under the specified conditions, to "residence" rates, Dr. White concluded appellant was unjustly discriminating against her in charging its regular business rate for the service rendered her.

On July 26, 1935, Dr. White filed her complaint with the commission at Complaint Docket No. 10856, charging, in substance, that although "all other physicians, osteopaths, chiropractors and Christian Science practitioners," having their offices in their residences, were being rendered service at the "residence" rate of $3.00 per month, appellant was charging her the "business" rate of $6.00 per month for a like service, rendered under similar circumstances and conditions. Appellant filed an answer averring, inter alia, that a "physiotherapist is not in the same class of the healing arts as are physicians, osteopaths and chiropractors, and that a valid and reasonable distinction exists between physiotherapists and the others to which the residence rate is allowed."

After a hearing, the commission filed its report and order on February 10, 1936. Material findings read: "The commission sees no valid distinction between telephone service to a physiotherapist, maintaining an office in a residence, and such service to a physician, surgeon, nurse, dentist, veterinary surgeon, osteopath, chiropractor, or Christian Science practitioner, all of whom receive residence rating where their offices are located in their residences. ...... To refuse service to com-

plainant at a residential rate, and to grant service to those named in the exception at residential rates, where no valid reason appears for failing to include complainant within the exceptions, *is* unjustly discriminatory and unreasonably preferential." (Italics supplied)

The action of the commission upon this complaint was thus expressed: "It is ordered: That the complaint be and is hereby sustained." The telephone company applied for and was refused a rehearing; no appeal was taken from the order.

We do not agree with the contention advanced by counsel for the commission to the effect that the proceedings we have just reviewed were had under the reparation section of the statute, Section 5 of Article V, 66 PS §511, and therefore furnished a basis for the reparation order from which the present appeal was taken. It is clear that the complaint was filed and the proceedings had under Section 3 of Article V, 66 PS §492, which provides for the exercise by the commission of its quasi-legislative powers when it has determined upon its own motion, or upon a complaint, inter alia, that the rates charged by any public service company for any service rendered, are unjustly discriminatory against any particular person, by prescribing the "proper regulations and practices, as affecting such rates, to be observed by the public service company." That is exactly what was done in this case and appellant, pursuant to the order of February 10, 1936, amended its regulations to include "drugless therapists, physiotherapists, chiropodists, midwives and optometrists" in the classes of patrons entitled to residential rates for telephones in their residences.

The present contention of the commission is ruled against it by the case of *Centre Co. Lime Co. et al. v. P. S. C.*, 96 Pa. Superior Ct. 590, in which we held that in a complaint against rates or regulations under Section 3 the only question the commission is authorized to

determine is whether the rates or regulations, in force at the time of its investigation, are unjust, unreasonable, discriminatory, etc., and will be for the future. That the commission so understood the extent of its jurisdiction under the complaint of July 26, 1935, is apparent from the fact that its finding was that the refusal of appellant to render service to Dr. White at residential rates "*is* unjustly discriminatory and unreasonably preferential." We distinctly said in the case cited that the findings on the issues actually involved in a proceeding under Section 3 "furnish no basis for awarding or refusing reparation." Manifestly, neither the complainant nor the commission had the matter of possible reparation in mind at the time that complaint was filed and disposed of by the commission. The complaint did not contain a prayer for reparation, nor did the report or order of the commission include any reference to that matter. We also said in the above case that reparation cannot properly be determined by the commission until a claim for it has been presented to it in the manner prescribed by the act.

The complainant, apparently, was advised with respect to the proper procedure before the commission and on June 22, 1936, filed a second petition with the commission, at Complaint Docket No. 11224, reciting its adjudication of February 10, 1936, of discrimination against her and praying that an order of reparation be made against appellant directing the payment to her of $72, with interest, as the difference between the amount actually collected from her during a period of two years and the amount she should have been charged. Unquestionably this petition was filed under Section 5, which prescribes the procedure for fixing and recovering the amount of reparation when the commission shall have determined "upon complaint or upon its own motion," that any rates which have been collected, "or practices which have been enforced ...... in relation

to any service rendered" by any public service company were "unjust and unreasonable or unjustly discriminatory."

In the later case of *Centre Co. Lime Co. v. P. S. C. et al., (No. 1)* 103 Pa. Superior Ct. 179, 157 A. 815, it was held that a proceeding for reparation is intended to redress under the quasi-judicial powers of the commission an injury suffered by a rate payer in the past; that the awarding of reparation for past wrongs, on the one hand, and the ascertainment, on the other, whether or not, at the time of investigation, existing rates and regulations are unreasonable and will be for the future, are essentially different matters and are, therefore, dealt with under separate and distinct sections of the statute. It was also stated in that case that it is improper to include a prayer for reparation in a complaint against existing rates or regulations filed under Section 3, but that such prayer may be included in a complaint under Section 5. By Section 5 the commission is authorized to make an order for reparation directing payment to a complainant, within such reasonable time as may be specified in the order, of the amount of damages actually sustained in consequence, inter alia, of unreasonable regulations, classifications or practices. It is further provided that the commission "shall state in said order the exact amount to be paid, as well as its findings upon pertinent questions of fact."

A hearing was had upon the petition for reparation at which the record of the prior hearing was incorporated, the only additional evidence being Dr. White's statement she had paid the business rate for more than seven years. Upon the record thus before it the commission made the order now appealed from awarding reparation in the sum of $91.50, instead of $72 as asked in the petition, upon the theory that the complainant had been charged an excess of $3 per month and that the reparation period began on July 26, 1933,

(two years prior to the filing of the original petition on July 26, 1935,) and ended February 10, 1936, the date upon which the complainant was included in the residential classification.

There are a number of reasons why we cannot sustain the order. As remarked in *Centre Co. Lime Co. v. P. S. C. et al., (No. 1)* 103 Pa. Superior Ct. 179, at pages 189-191, 157 A. 815, it does not follow automatically, as the commission seems to have assumed, that because it has determined that a rate or a classification was unreasonable at the date of its investigation it must also have been unreasonable in the past. Whether it was unreasonable in the past depends necessarily upon the facts disclosed by the record; hence the provision in Section 5 that the commission shall state "its findings upon pertinent questions of fact."

Neither the report nor the order of the commission here involved contains such findings as are essential under the circumstances of this case to support the order. This is not a case in which the complainant was entitled to the residential rate upon the face of the tariffs. Her profession was not one of those specified in the regulation and, as already indicated, the appellant questioned her right to be included under a regulation applicable to physicians, etc. By its previous order the commission placed her within that classification. Appellant accepted that decision and promptly reduced complainant's rate accordingly.

There is nothing in the record indicating that the position taken by appellant in excluding the complainant from the classification was not assumed in good faith. It was a matter concerning which there could be an honest difference of opinion. We do not here have a case in which a public service company has arbitrarily excluded a patron clearly entitled to be included in a certain group from that classification. The commission made no findings as to the date complainant requested

that she be granted residence rates or the grounds upon which such request, if made, was refused. There is evidence on the record of the first hearing that an application of some kind was made by her in January of 1929, but the commission has made no specific findings relative to this important matter. The absence of the findings contemplated by Section 5 may be due to a misinterpretation by the commission of its order of February 10, 1936. In the report supporting the reparation order the commission says that it had determined by its former report and order that "the business rate, as applied to the petitioner, *was* and *had been* unjustly discriminatory and unreasonably preferential since the effective date of respondent's tariffs." (Italics supplied) The report and order referred to made no reference whatever to the past, but specifically said that to refuse service to the complainant at the residential rate *"is* unjustly discriminatory and unreasonably preferential." (Italics supplied)

Another difficulty with the order is that the reparation period, fixed therein, is, in our opinion, based upon a misinterpretation of the statute. The language of Section 5 is that "no reparation . . . . . . shall be awarded by the commission unless the complaint or petition shall have been filed with it within two years from the time when the cause of action accrued." The commission held that by the filing of the *original* petition complainant was entitled to claim reparation for a period beginning two years prior thereto, or from July 26, 1933. We think "the complaint or petition" referred to in Section 5 is the initial petition challenging the rate or classification as having been unreasonable *in the past* (Cf. *Allegheny Steel Co. v. New York Central R. R. Co. et al.,* 324 Pa. 353, 188 A. 332), in this case, the petition for reparation, which was not filed until June 22, 1936. As we view the matter, complainant, even if

entitled to reparation, could not have claimed it prior to June 22, 1934, or after February 10, 1936.

Prior to the effective date (June 1, 1937,) of the new "Public Utility Law" of May 28, 1937, Volume I, P. L. 1053, Section 313, 66 PS §1153, (Cumulative Supplement) a public service company against which an order awarding reparation was made had no right of appeal to this court from such order. See Section 17 of Article VI of the Statute, 66 PS §811, in which it is enacted that "there shall be no appeal from any order for reparation made by the commission, but the suit may be brought as hereinbefore provided," i. e., in the court of common pleas. However, in *Centre Co. Lime Co. et al. v. P. S. C.*, 96 Pa. Superior Ct. 590, we held that a complainant who had been *refused* an award of reparation by the commission could appeal from such refusal to this court.

The above cited section of the new act provides for an appeal to this court from "any refund order" and for suit, if the utility "fails to make refunds within the time for payment fixed by any final order of the commission, or any appellate court, as the case may be."

The principle is well established that where legislation concerns merely the mode of procedure it may be applied to litigation which has not been concluded at its effective date. The most that can be said of this feature of the new law is that it provides an additional remedy to a public service company deeming itself aggrieved by an award of reparation made against it by the commission. Under the authorities we think this is merely a change in procedure which does not affect any substantative rights: *Pa. P. & L. Co. v. P. S. C. et al.*, 128 Pa. Superior Ct. 195, 200-201, 193 A. 427; *Kunze v. Duquesne City*, 126 Pa. Superior Ct. 43, 47, 190 A. 538; and *Long's Appeal*, 87 Pa. 114. We have accordingly decided to dispose of this appeal upon its merits.

In the absence of findings by the commission from which it might reasonably be concluded that appellant's interpretation of the regulation in question, as applied to Dr. White, had been arbitrary and unjustifiable, we cannot affirm the order for reparation, even for the period above indicated.

Order reversed.