Opinion by
 

 Rhodes, J.,
 

 The Cheltenham & Abington Sewerage Company has appealed from an order of the Pennsylvania Public Utility Commission (successor to the Public Service Commission) that its rates were unreasonable, oppressive, and extortionate from October 17, 1933, until January 1, 1937, and that reparations should be awarded for that period.
 

 Appellant furnishes sewerage service to the public in certain areas of Abington and Cheltenham Townships, Montgomery County. On October 6, 1930, in proceedings before the Public Service Commission reported as
 
 Ruttle et al. v. Cheltenham & Abington Sewerage Co.,
 
 10 Pa. P. S. C. 502, it was ordered to file, post, and publish a tariff for sanitary sewerage service to yield a gross annual revenue not in excess of |36,140. A tariff intended to produce this result was prepared and filed with the commission, and on April 13, 1931, was adopted by the commission as in compliance with the order of October 6, 1930, to become effective on July 1, 1931.
 

 
 *277
 
 The commission, however, on December 11, 1934, on its own motion instituted a proceeding to No. 10,546 of its complaint docket inquiring into the fairness, reasonableness, and justness of the rates provided by this tariff. An order by the commission followed on August 30, 1935, which fixed the annual revenue allowable at the maximum of $27,700. On appeal we reversed the order with directions that the findings, valuations, and rates be reformed so as to permit an annual allowable gross revenue of $30,050.
 
 Cheltenham & Abington Sewerage Co. v. P. S. C.,
 
 122 Pa. Superior Ct. 252, 186 A. 149. This court’s opinion Avas rendered on July 10, 1936, and further appeal to the Supreme Court was sought both by the commission and the present appellant, but Avas refused on September 17, 1936. The commission then made an order dated November 30, 1936, embodying the directions of this court, and appellant filed a neAV tariff to become effective on January 1, 1937. This was the first date since July 1, 1931, that appellant did not operate under the tariff approved by the commission on April 13, 1931, as complying Avith its order of October 6, 1930.
 

 On October 17, 1935, pending the appeal to this court from the order of August 30, 1935, an individual patron of appellant and the Glenside Home Protective Association, Inc., a Pennsylvania corporation of the first class, assignee of various other patrons, filed with the commission a complaint alleging the unjustness and unreasonableness of the rates imposed by appellant in the past, and praying the award of reparations therefor. After hearing, the commission entered an order nisi which sustained the complaint on the finding that appellant’s rates Avere unreasonable, oppressive, and extortionate from October 17, 1933, the tAVO-year period prior to the filing of the complaint, until January 1, 1937, and aAvarded reparations for that period. Further hearing was ordered to determine the damage sustained by the particular complainants and other patrons of
 
 *278
 
 appellant. Appellant’s exceptions to this order, except Nos. 6 and 19, which have no bearing on the issues here, were dismissed, the order nisi was made final, and this appeal followed.
 

 The commission has moved to quash the appeal on the ground that the order appealed from is merely an interlocutory order, since it did not attempt to itemize the damages, if any, payable to the particular persons aggrieved, but specifically left the ascertainment of those rights to a further hearing.
 

 The appeal will not be quashed, and the motion is overruled.
 

 The Public Utility Commission and its predecessor under the earlier law, the Public Service Commission, have apparently accepted the suggestion made by this court in
 
 Centre County Lime Co. v. P. S. C. et al. (No. 1),
 
 103 Pa. Superior Ct. 179, 157 A. 815, and have adopted the practice of conducting proceedings on reparation complaints in two steps, first, hearing and determining whether the rate paid in the past was unjust or unreasonable, and, second, hearing and determining the individual claims for refund of both complainant and noncomplainant patrons of the utility. We do not consider the disposition of the first question merely interlocutory. In so far as the commission is concerned it is a final determination of the propriety of the utility’s conduct in the past in imposing the rate complained of. If reparations are ordered nothing which subsequently transpires before the commission will eliminate the obligation so declared, unless it happens that every patron claiming a refund either can be shown delinquent in payment of the rates charged or is met with an equivalent counterclaim due the utility. When we consider the many complainants in the ordinary reparation proceedings and the number of patrons of the average utility this result is not likely to occur.
 

 In the second step of the proceedings the evidence,
 
 *279
 
 oral and documentary, is usually extremely voluminous. It would seem that the public interest would be more efficiently served by permitting immediate judicial review of tbe first step than by postponement until tbe completion of the calculations and tabulations necessarily required in tbe second. Moreover, tbe small number of reparation proceedings compared with actions at law guarantees against tbe hopeless prolongation of tbe business of both lower and appellate courts, which historically has been’ tbe moving consideration against allowing an appeal from an interlocutory order, for example, tbe overruling of a demurrer.
 

 In
 
 Baltimore & Ohio Railroad Co. et al. v. Pa. P. U. C. et al.,
 
 136 Pa. Superior Ct. 517, 7 A. 2d 488, we beard and disposed of an appeal similar to tbe present one without tbe question having been raised as to whether it was from an interlocutory order. Tbe same situation existed in
 
 Pennsylvania Railroad Co. et al. v. P. S. C. et al.,
 
 125 Pa. Superior Ct. 558, 190 A. 367, where, in a reparation proceeding, tbe commission determined a rate paid in tbe past to have been unjust, unreasonable, oppressive, and extortionate, but, making no award of reparation, ordered that the proceeding “ ‘be set down for further bearing at a time to be designated, to ascertain what damages, if any, complainant has sustained/ ” (page 561) In an opinion by Judge Cunningham we said (page 562) : “Appellants contend there was no competent evidence that any damages bad been actually sustained by tbe complainant, within tbe meaning of section 5 of article Y of the statute. Tbe commission has not undertaken, as yet, to pass upon that question but has expressly stated in its order that, in accordance with the holding of this court in tbe second Centre County Lime Company case, supra, (p. 188), it intends to conduct a further bearing ‘to ascertain what damages, if any, complainant has sustained/
 
 ”
 

 
 *280
 
 In
 
 Allegheny Steel Co. v. New York Central R. Co. et al.,
 
 324 Pa. 353, 188 A. 332, which was an action in assumpsit to enforce payment of reparations, it was shown that on April 5, 1932, the Public Service Commission found rates imposed in the past to have been unreasonable and determined the extent of the overcharge, but did not until April 18, 1933, after further hearings, make the individual awards of reparations. These were not paid, and the action at law was begun to enforce payment. The loAver court refused to admit evidence that the rates in fact were not unreasonable as found by the commission, and this ruling was approved by the Supreme Court on the ground that the order of April 5, 1932, was appealable, and, not having been appealed, was conclusive on the question of unreasonableness. In an opinion by Mr. Justice Linn the Supreme Court said (pp. 359, 360) : “The effect of the finding and determination in the order of April 5, 1932, was to determine that the railroads had committed a tort and the obligation to make compensation. We think it was appealable under article YI, section 17:
 
 New York & Pa. Go. v. New York Central R. R. Co.,
 
 267 Pa. 64, 110 A. 286;
 
 Citizens Passenger Ry. v. Public Service Commission,
 
 271 Pa. 39, 48 et seq., 114 A. 642. ......The order finding the rates unreasonable in the amounts specified Avas a declaration to which the law annexed the obligation to refund the overcharge. It is immaterial, in this connection, that the statute also provided for a determination of the amount and for suit in the common pleas to recover it if the defendant failed to discharge the obligation.”
 

 In support of its motion to quash, the commission cites
 
 Philadelphia Electric Co. v. P. S. C. et al.,
 
 314 Pa. 207, 171 A. 690, AArhere, at pages 215, 216, it Avas said “that no appeal will lie from its [commission’s] rulings, before final decree, unless the jurisdiction of the commission over the parties before it, or of the subject-
 
 *281
 
 matter being considered, is challenged.” In this case there was an attempt by the utility to enjoin in common pleas the commission’s ruling at the inception of a rate case that the burden of proof was upon the respondent utility. We think that what was said in
 
 Allegheny Steel Co. v. New York Central R. Co. et al.,
 
 supra, renders the general language of the Philadelphia Electric Company case, supra, irrelevant and inapplicable.
 

 Citing as authority the
 
 Citizens Passenger Railway Co. v. P. S. C. et al.,
 
 271 Pa. 39, 114 A. 642, for the statement that the order of April 5, 1932, in the Allegheny Steel Co. case, supra, was appealable under article 6, §17,
 
 [1]
 
 of the Act of July 26, 1913, P. L. 1374, as amended, 66 PS §811, suffices to indicate that this order was considered by the Supreme Court to be within the description of article 6, §10, 66 PS §771, “a written finding, determination, or order, either dismissing the complaint or directing the public service company ...... to satisfy the cause of complaint ......,” and immediately appealable under section 17, as distinguishable from the order in the Citizens Passenger Railway Company case, supra, which overruled the demurrer of the respondent utilities, and directed an answer to the merits of the complaint, and which was held interlocutory and nonappealable. In like manner the order from which the present appeal is taken may be said to be an appealable order, and is thus properly before this court for review.
 

 On the merits the order of the commission will be inodified and affirmed.
 

 We agree, as it has been argued, that the determination by the commission of the propriety or impropriety of the rate, reparation for the payment of which is here
 
 *282
 
 sought, was governed by the Public Service Company Law of July 26, 1913, P. L. 1374, 66 PS §1 et seq., which was superseded by the Public Utility Law of May 28, 1937, P. L. 1053, effective on June 1, 1937, 66 PS §1101 et seq. We so decided in
 
 Baltimore & Ohio Railroad Co. et al. v. Pa. P. U. C. et al.,
 
 supra, 136 Pa. Superior Ct. 517, 7 A. 2d 488, where, in an opinion by Judge Cunningham, we said (p. 519): “Material changes made are, inter alia, that an order of reparation may be made ‘in any proceeding involving rates/ if the commission shall determine that any rate received by a public utility was ‘unjust or unreasonable/ and the commission ‘need not find that the rate complained of was extortionate or oppressive.’ As the petitions for reparation here involved were filed prior to the effective date of the new law, and in connection with a pending proceeding under section 3 of Art. V of the old law, 66 PS §492, instituted for the establishment of reasonable rates for the future, which was terminated on November 25, 1936,
 
 (Mfrs’ Assn. of Lancaster v. Pennsylvania R. Co.,
 
 15 Pa. P. S. C. 495), this appeal must be considered and disposed of under the law as it stood at the time the petitions were filed.”
 

 The old law placed upon the commission the requirement of finding a rate unreasonable to the point of its being oppressive or extortionate in order to award reparations.
 
 Centre County Lime Co. v. P. S. C. et al. (Wo. 1),
 
 supra, p. 190. But it is also true that the scope of this court’s review of the commission’s action is now fixed by the new law. Under section 22 of the Public Service Company Law, as amended by the Act of June 12, 1931, P. L. 530, §1, 66 PS §836, in every appeal involving a question of reasonableness of rates, we were called upon to exercise our independent judgment whether the findings of the commission were reasonable and proper. See
 
 Pennsylvania Railroad Co. et al. v. P. S. C. et al.,
 
 supra. In
 
 Pennsylvania Power & Light Co.
 
 
 *283
 

 v. P. S. C. et al.,
 
 128 Pa Superior Ct. 195, at page 200, 193 A. 427, at page 430, we indicated the extent of the review we are now called upon to make:
 

 “By §1107 of the new law, designated as the ‘Public Utility Law,’ it is provided that in case of appeals to this court, ‘the order of the commission shall not be vacated or set aside either in whole or in part except for error of law or lack of evidence to support the finding, determination, or order of the commission or violation of constitutional rights.’
 

 “This appeal involves the reasonableness of rates and in such matters the new law makes a radical change in the scope of the inquiry by this court, limiting our inquiry to matters of law and thereby placing appeals involving a question of reasonableness of rates on the same basis as other appeals.
 

 “The change is procedural and affects pending litigation insofar as it is possible to conform to and give effect to the change in the law.”
 

 Although the commission was required to proceed under the old law, and, to award reparations, find the rate oppressive or extortionate, as it here did, a review of its finding does not require the exercise of the independent judgment of this court, but our review is limited to ascertaining whether there was an error of law or a lack of substantial evidence to support the commission’s finding.
 

 We are of the opinion that there is no lack of substantial evidence to support the finding and determination of the commission that the rate charged by appellant previous to October 17, 1935, was unreasonable, oppressive, and extortionate. But we are also of the opinion that the commission erred as a matter of law in fixing the date when the rate can be considered to have become oppressive and extortionate. As we have previously stated, the rate was one fixed by a tariff submitted to and accepted by the commission as in compliance with its order of October 6, 1930, that appel
 
 *284
 
 lant’s gross annual revenue was not to exceed $36,140. Ah element in the calculation by which that figure was reached was the amount appellant was required annually to pay Cheltenham Township, under contract, for conveyance of the sewage collected in appellant’s lines through the township sewers and as its proportionate share of the cost of conveyance of the combined sewage through those of the city of Philadelphia and disposal thereof by the city’s disposal facilities. Because at the time of those proceedings there was some uncertainty as to that amount, the order of the commission attempted to meet the difficulty with the following provision: “No bills have yet been rendered under that contract, and there is reasonable doubt as to the exact obligations that respondent will he called upon to meet. Under these circumstances the amount claimed by the respondent, $10,940, will be allowed until the exact amount is determined, at which time rate adjustments if necessary can be made.”
 

 Appellant does not dispute that for no year did its payments under the contract reach the allowance of $10,940. From 1931 to 1934, inclusive, the highest amount paid was $7,759.86, and the lowest $7,328.98 Obviously the annual reports of appellant to the Public Service Commission reflecting this experience made the commission aware that appellant was earning upwards of $3,000 annually in excess of the maximum the commission intended to allow, and led to its filing the complaint of December 11, 1934. Previous to this date appellant’s conduct may have been excusable. There is no doubt that the commission’s order as to the necessity of adjustment of rates is somewhat ambiguous, and very likely if the discrepancies between appellant’s annual expenditure and the allowance were insignificant, even though in appellant’s favor, no adjustment would be considered “necessary.” But the differences represented a material percentage of appellant’s annual allowable income, and the order was not clear whether
 
 *285
 
 appellant had the duty of moving or was justified in awaiting the commission’s action. We do not share the view of the commission in its report and order nisi that it was incumbent upon appellant to make a voluntary rate adjustment immediately upon the first annual ascertainment of the unknown quantity of the earnings formula. It may as well be said that the commission had the duty of instituting a complaint on its own motion forthwith. If appellant was remiss the commission was also somewhat lax; its order was ambiguous, and it temporized until December 11, 1934. After the rate was challenged on that date on the commission’s own motion, any doubt on appellant’s part as to the meaning of the original order should have been dispelled, and its persistence thereafter constitutes evidence of the extortionate and oppressive nature of the rate.
 

 It is true, of course, that a finding in a proceeding on a complaint against the reasonableness of an existing rate for the future, governed by section 3, art. 5, of the Public Service Company Law of 1913, 66 PS §492, furnishes no basis for awarding or refusing reparation of payments of the same rate in the past, an entirely separate proceeding under section 5 of that article of the statute (66 PS §511).
 
 Bell Telephone Company of Pennsylvania v. Pa. P. U. C.,
 
 130 Pa. Superior Ct. 514, 520, 197 A. 783;
 
 Pennsylvania Railroad Co. et al. v. P. S. C. et al.,
 
 supra, pp. 561, 562;
 
 Centre County Lime Co. v. P. S. C. et al. (No. 1),
 
 supra, p. 185;
 
 Centre County Lime Co. et al. v. P. S. C. et al.,
 
 96 Pa. Superior Ct. 590, 597, 598.
 

 Our conclusion is not determined by the success or failure of the action instituted by the commission on December 11, 1934, but upon the fact that appellant on that date had notice the commission considered the existing rate unreasonable. In
 
 Pennsylvania Railroad Co. et al. v. P. S. C. et al.,
 
 supra, we expressed ourselves in a similar manner. In that case it appears that
 
 *286
 
 two railroads imposed a rate prescribed by the commission on July 15,1929. On June 27,1934, the intervenershipper filed a complaint against the rate as unreasonable for the future, and on July 31, 1935, it filed a second petition to cover shipments up to July 1, 1935. Both petitions asked for reparations. In a consolidated proceeding the commission sustained both complaints, and, although ordering a further hearing before making an award of reparations, found the rate had been unreasonable, oppressive, and extortionate from June 30, 1932, to June 30, 1935. It appears also, however, that in an independent proceeding by other shippers against the same rate, these carriers, among others, had received notice on October 20, 1934, of the commission’s order of October 16, 1934, to reduce the rate. We held that it was error to fix the beginning of the reparations period at Juné 30, 1932, and modified the order by making it initially effective October 20, 1934. In an opinion by Judge Cunningham we said (125 Pa. Superior Ct. 558, at pp. 567, 568, 190 A. 367, at p. 372) : “Appellants had notice on October 20, 1934, that the commission, after full hearing, had, in the language of section 5, ‘determined’ that their rate of |2.40 was ‘unjust and unreasonable.’ They knew that under such a finding the commission had ‘power and authority to make an order for reparation.’ ...... But after the receipt of such notice, appellants should, under the circumstances here present, be held to have taken their chances with respect to liability for any damages actually sustained by the intervener.”
 

 In the present case it may likewise be said that the institution of the complaint on the commission’s own motion on December 11, 1934, gave appellant notice that the commission had determined the rate then charged to be unreasonable. We think that for such a purpose institution of action on the commission’s own motion was here the equivalent of a determination by the commission in favor of a patron’s complaint. For
 
 *287
 
 the period previous to October 20, 1934, in the cited case, the carriers were held to have followed a commission-made rate, and thus escaped liability for reparation. So, in the instant case, previous to December 11, 1934, the rate applied under the commission’s order of October 6, 1930, and accepted by the commission as complying with this order must be considered a commission-made rate. The commission was without power to order reparations for any period during which the commission-made rate was effective. This has been discussed at length in
 
 Pennsylvania Railroad Co. et al. v. P. S. C. et al.,
 
 supra, and in
 
 Baltimore & Ohio Railroad Co. et al. v. Pa. P. U. C. et al.,
 
 supra, and requires no further elaboration.
 

 Appellant also contends that the commission erred in finding reparations payable after the date of the filing of the petition, that is, from October 17, 1935, until January 1, 1937. We have been given no authority which is decisive of this question. The commission in its brief has referred to
 
 Turtle Creek Borough v. Pennsylvania Water Co.,
 
 243 Pa. 401, 90 A. 194, where, on May 23, 1911, a bill in equity was filed alleging an increase in rates had been put into effect on January 1, 1911, and praying reduction for the future and refund for the past. The final decree ordered a refund from January 1,1911, up to the date of the decree, February 8, 1913. This may correspond in theory to the result reached by the commission in the present case, but since the point was not raised or decided in that case it is not definite authority for the commission’s finding. We think that what was said in
 
 Allegheny Steel Co. v. New York Central Railroad Co. et al.,
 
 supra, in reference to a reparation proceeding, is more persuasive and determinative (324 Pa. 353, at page 359, 188 A. 332, at page 335): “The effect of the finding, and determination in the order of April 5, 1932, was to determine that the railroads had committed a tort and
 
 *288
 
 tlie obligation to make compensation.” It is not necessary to cite any authority for the proposition that damages in actions ex delicto are not restricted to the period ending with the institution of suit. We are convinced that it would not serve any useful purpose in securing either complete justice and fairness to the utility or the orderly administration of the business of the commission to require the filing of a second reparation complaint to cover the period between the date of the first and the determination of the commission unless evidence is adduced, either in the proceeding under the first complaint or previous to the determination, of a change in circumstances relevant to the reasonableness of the rate during that period. In our opinion therefore it was not error for the commission on January 3, 1940, to find reparations payable to January 1, 1937, the effective date of the new tariff.
 

 Finally, appellant challenges the propriety of reference by the commission in its order nisi to files of the commission not in evidence at the hearing as showing the continuance during 1934 of informal conferences between appellant and the commission relative to a voluntary adjustment of its rates. In view of the disposition which we have made of the commission’s finding as to the period previous to December 11, 1934, this contention becomes immaterial.
 

 The ninth, tenth, eleventh, and twelfth assignments of error, in so far as they relate to dismissal of appellant’s twentieth and thirtieth exceptions to the order nisi of the commission, are sustained. The remaining assignments of error are overruled.
 

 The final order of the commission is affirmed, with the modification that its operation and effect be restricted to the period from December 11, 1934, to January 1, 1937.
 

 [1]
 

 This section has been repealed by the Act of May 28, 1937, P. L. 1053, §1502, 66 PS §1562, but is virtually the same as section 1101, art. 11, of the Act of May 28, 1937, P. L. 1053, 66 PS §1431, in so far as the present question is concerned.