## Commonwealth v. Cheltenham and Abington Sewerage Company

*Wisler, Pearlstine, Talone & Gerber* and *Gabriel D. Weiss,* for plaintiff.

*Smillie, Bean & Scirica* and *George Henry Huft,* for defendant.

DANNEHOWER, J., June 15, 1948.—This is an action in assumpsit brought by the Commonwealth of Pennsylvania versus the Cheltenham & Abington Sewerage Company, a public utility, to recover the sum of $305.70, representing the amount of salaries, traveling, and subsistence expenses of employes of the Pennsylvania Public Utility Commission, while engaged in an examination of the records and accounts of defendant, in connection with a reparation proceeding then pending before the commission: "Benjamin H. Davis et al. v. Cheltenham & Abington Sewerage Company, Complaint Docket No. 10967."

The affidavit of defense admitted that an examination was made, the cost thereof, that no objection was made by defendant to the notice of the assessment by registered mail within 15 days, and avers that such examination and assessment were not made in the performance of the duties of the commission under the Public Utility Law and were made without any lawful authority.

At the trial before the jury, where defendant offered no evidence, the trial judge gave binding instructions in favor of plaintiff and thereupon a directed verdict was entered in plaintiff's favor in the sum of $305.70. Subsequently, defendant has filed motions for a judgment non obstante veredicto and for a new trial, which after argument are pending for decision.

The questions involved are: "Was it necessary and lawful in conducting reparation complaint between individual patrons and a public utility corporation, for the Pennsylvania Public Utility Commission to determine the individual claims for refund of non-complainant patrons of the utility as well as complainant ones; and is the utility liable for the expenses incurred by the commission in ascertaining such facts from the books of the utility, when the utility had failed to supply such data?"

464

The Public Utility Law of May 28, 1937, P. L. 1053, as amended, sec. 313, 66 PS §§1153, 1217, 1461, provides:

"If, in any proceeding involving rates, the commission shall determine that any rate received by a public utility was unjust or unreasonable, or was in violation of any regulation or order of the commission, or was in excess of the applicable rate contained in an existing and effective tariff of such public utility, the commission shall have the power and authority to make an order requiring the public utility to refund the amount of any excess paid by any patron, in consequence of such unlawful collection. . . . Any order of the commission awarding a refund shall be made for and on behalf of all patrons subject to the same rate of the public utility. . . ."

The Public Utility Law, supra, also provides:

"Section 507. Inspection of Books and Records by Commission—The commission shall at all times have access to, and may designate any of its employes to inspect and examine, any and all accounts, records, books, maps, inventories, appraisals, valuations, or other reports, documents, and memoranda kept by public utilities, or prepared or kept for them by others; and the commission may require any public utility to file with the commission, copies of any or all of such accounts, records, books, maps, inventories, appraisals, valuations, or other reports, documents, and memoranda."

"Section 1201. Assessment of Regulatory Expenses Upon Public Utilities—Whenever the commission, in the performance of its duties under this act, shall conduct an investigation of the affairs of any public utility, involving an examination of the records or facilities thereof, such public utility shall pay to the commission a sum equal to the salaries paid to commission employes while engaged in such examination, together with such traveling and subsistence expenses

of said employes as may be directly attributable to such examination; . . ."

The plaintiff's commission order of October 1, 1945, in Davis et al. v. Cheltenham & Abington Sewerage Co., Complaint Docket 10967 (admitted in evidence as plaintiff's exhibit), discloses a history of protracted rate and reparation proceedings against defendant which, after various appeals to our appellate courts, terminated in a determination that defendant shall pay reparations to its patrons for overcharges collected from them for the period commencing August 30, 1935, and ending December 31, 1936. Thus it became plaintiff's duty to determine the identity of all of defendant's patrons, including noncomplainant patrons, who were entitled to refunds and the amounts thereof. Accordingly, the commission held hearings for that purpose and when it became apparent that it could not through that medium obtain the information it required, it then made an examination of the books and records of defendant utility company, and promptly obtained the necessary data.

The propriety of plaintiff's action in causing this examination is illustrated and approved in Cheltenham & Abington Sewerage Co. v. Pennsylvania Public Utility Commission, 159 Pa. Superior Ct. 59, 63 (1946), where the court said:

"We pointed out in the former appeal (146 Pa. Superior Ct. 274, 22 A. 2d 37) that the approved practice in conducting reparation complaints is in two steps: '. . . first, hearing and determining whether the rate paid in the past was unjust or unreasonable, and, second, hearing and determining the individual claims for refund of both complainant and noncomplainant patrons of the utility . . .'."

The court further said, at page 64:

"At the meeting held on January 21, 1943, the counsel for this appellant stated that he and the counsel for the complainants had agreed, instead of spending days

taking testimony, that his client would prepare a statement of the names of the complainants, etc., which would contain such information that would enable the Commission to determine the exact amount of reparation each of the complainants is entitled to. As that statement was not produced, the commission directed an accountant on its staff to make an examination of the appellant's records to ascertain the basic facts."

Thus it is clear that the examination made by plaintiff was an exercise of its lawful duty; and the provisions of section 1201(a) of the Public Utility Law, supra, make defendant liable for the expenses incurred by plaintiff in said examination of its books and records.

We note that defendant does not argue in its brief that it was unlawful for the commission to ascertain which of its patrons were entitled to refunds and the amounts thereof; its objection was to the procedure taken by plaintiff, viz., the examination of its books instead of the issuance against defendant of a subpœna duces tecum to produce the books at a hearing. It is to be noted that there is no evidence in the record before this court disclosing that defendant had, at any time, heretofore advocated the subpœna duces tecum method of obtaining that information, and indeed plaintiff did fix hearings for the purpose of identifying all the patrons, both complainant and noncomplainant, who were entitled to refunds from defendant and the amounts thereof. Defendant, through its procrastinating tactics, prevented the commission from acquiring the information it required to perform its statutory duty. Finally, the commission, in the exercise of its sound judgment, took appropriate action as is disclosed in its order of October 1, 1945, supra, which states as follows:

"Eventually despairing of the development of an adequate record by ordinary procedure we directed our staff to make a field examination of the utility records to ascertain the basic facts."

We hold, therefore, that the commission had statutory authority in the performance of its duties to conduct such a necessary investigation of the affairs of the public utility and assess the cost thereof.

And now, June 15, 1948, for the foregoing reasons, defendant's motions for judgment non obstante veredicto and for a new trial are refused, and overruled, and an exception granted.