Manning et al. *v.* Newville Water Company, Appellant.

Argued March 16, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Berne H. Evans* of *Hause, Gawthrop, Evans and Story,* for appellant.

*E. M. Vale,* for appellee.

Opinion by James, J., December 16, 1933:
This is an appeal from a judgment entered in an

amicable action in assumpsit on a case stated to collect awards of reparation made by the Public Service Commission against the defendant company in favor of the 119 legal plaintiffs who have assigned their claims to the use-plaintiff.

In May, 1927 the defendant company filed its tariff P. S. C. Pa. No. 5 to become effective on July 1, 1927, superseding the tariff P. S. C. Pa. No. 4 then in effect and increasing the rates for water to its consumers. On June 2, 1927 a public town meeting of the consumers was called and held in the Borough of Newville to consider and take action on the proposed increase of the water rates. At this meeting James W. Sharp, Paul E. Spangler, W. H. McCrea, E. W. James and R. L. Shenk, the latter three being legal plaintiffs herein, were appointed a committee to file, as representatives and trustees of all the consumers of the defendant company, a complaint against the proposed rate increase. On June 30, 1927, prior to the effective date of defendant's tariff No. 5 the committee filed a complaint alleging that the proposed rates were and would be unjust and unreasonable, which complaint was signed by the members of the committee as individuals and contained no recital of the action of the consumers or averment that the plaintiffs were acting in a representative capacity. On October 11, 1927, the Public Service Commission granted the borough leave to intervene as party complainant on the condition that such intervention should not broaden the scope of the investigation. An answer was filed to the complaint, hearings were had and a final report and order was made by the Public Service Commission on April 23, 1929 sustaining the complaints, cancelling tariff No. 5 and reinstating the tariff No. 4 as of May 1, 1929. No appeal was taken by the defendant company or any of the complainants from the said report and order.

The rates charged and collected from the plaintiffs by the defendant company during the period tariff No. 5 was in effect, namely from July 1, 1927 to May 1, 1929, were unjust and unreasonable to the extent which they exceeded the rates of tariff No. 4. During this period the plaintiffs had paid, under protest to the defendant company, in excess of the reasonable rates fixed by the Public Service Commission, the total sum of $1,825.39, which sum is agreed upon as the total amount of all excess payments made by the plaintiffs. Defendant admits and agrees to the excess payments made by plaintiffs, E. W. James, W. H. McCrea and R. L. Shenk in the sum of $44.58, and the excess payments made by the other plaintiffs subsequent to March 4, 1929 in the sum of $317.71, amounting to $362.29, as just and reasonable claims. On March 4, 1931, plaintiffs filed their 119 individual petitions for reparations for the excess amounts paid by them individually; answers were filed, hearings were held and on October 13, 1931 the Public Service Commission made its report and order determining that the petitioners were entitled to reparation for the excess payments made on the unreasonable rates paid by them from July 1, 1927 to May 1, 1929 and ordered the defendant company to pay to the plaintiffs named in the order, within thirty days from the date of service of the order, the total sums set forth opposite the name of each party.

Appellant has raised three questions. 1. That the cause of action accrued upon the payment of the excessive rates. 2. That no reparation can be awarded except to those who within two years of excessive payment complained to or petitioned the commission. 3. That the agency of the individual complainants, if any existed, was not disclosed to the commission or the company and therefore is of no effect. These questions will be discussed in their order.

The questions involved relate entirely to a construction of Article V, Sec. 5 of the Public Service Law of July 26, 1913, P. L. 1374, which provides: "If, after hearing, upon complaint or upon its own motion, the commission shall determine that any rates which have been collected, ...... by any public service company complained of, ........ were unjust and unreasonable ...... the commission shall, upon petition, have the power and authority to make an order for reparation, awarding and directing the payment to any such complainant, petitioner, within a reasonable time specified in the order, of the amount of damages sustained in consequence of said unjust, unreasonable, or unlawful collections, ...... of such public service company: Provided, That such damages have been actually sustained by such complainant petitioner ......

"No reparation, as herein provided, shall be awarded by the commission unless the complaint or petition shall have been filed with it within two years from the time when the cause of action accrued. A suit for the enforcement of an order directing such payment shall be filed in the said court of common pleas within one year from the date of the order, and not after.

"No action shall be brought in any court on account of the wrongs or injuries referred to in this section, unless and until the commission shall have determined that the rate, regulation, classification, practice, act, or omission in question was unjust, unreasonable, or unjustly discriminatory or unduly or unreasonably preferential, or in excess of the rates contained in the said tariffs or schedules, and, then, only to recover such damages as may have been awarded and directed to be paid by the commission in said order."

The learned court below held that the cause of action for reparation claims founded on excess payments made on proposed rates attacked before the effective

date, accrues and the two-year period of limitation fixed by the statute, begins to run on the effective date of the final order determining that the proposed rates are unjust and unreasonable; and that a single complaint against proposed rates filed before the effective date of the tariff inures to the benefit of all consumers affected, and stays the running of the statutory limitation and satisfies the requirements of the statute. Appellant contends that the cause of action accrues on the date the consumer pays the unjust and unreasonable rate and that each such payment creates a new cause of action; that consumers who pay the unreasonable rate are limited to the two-year period in which they may ask for reparation and that only the original complainant is entitled to reparation for the two-year period when the reparation claim is filed more than two years subsequent to the date of the payment of the unreasonable rate.

It has been repeatedly held that the last tariff rate published as provided by law is the legal rate and having satisfied every requirement of the act it has become a collectible, suable rate until it is set aside by the method provided in the act: Suburban Water Co. v. Oakmont Boro., 268 Pa. 243, 248, 252, 110 A. 778.

The tariff which was filed by the defendant company became an effective legal rate on July 1, 1927 and until by order of the Public Service Commission this rate was declared to be unreasonable, the consumer was obliged to pay the rate as provided by the tariff. From July 1, 1927 until May 1, 1929 the rates as fixed by the tariff No. 5 constituted the legal rate for payment by the consumers of the defendant company during which time the consumers were obliged to pay the rates as fixed in tariff No. 5. Whether these legal rates were unjust and unreasonable depended entirely upon the action of the commission and during the

pendency of the complaint were for all purposes legal rates and no claims could be asserted by the consumers until after the final determination by the commission whether the rates were just and reasonable, during which period of time it was impossible to determine whether or not the complainants had any claim upon which to base a cause of action against the defendant company for the collection of unjust or unreasonable rates.

Under Sec. 4, Art. 5, the commission, upon its own motion or upon complaint, had the right to determine that any proposed rates were unjust and unreasonable. The complaint initiated by a consumer or any proper agent or agency or upon the motion of the commission itself to determine whether or not a rate is unjust and unreasonable gives authority to the commission to determine whether or not the rate is unjust and unreasonable and in this proceeding the commission has no authority to enter an order for reparation as Article V, Section 5 provides specifically that only after the determination of whether a rate is unjust and unreasonable shall the commission have authority to entertain a petition for an order of reparation. The petition for reparation is of an entirely different character than the complaint made to the commission for the determination of the justness or reasonableness of the rate and the authority and power to enter an order for reparation is predicated and based entirely upon the entry of an order by the commission that the rates complained against were unjust and unreasonable.

A rate complaint is an entirely separate and distinct proceeding from a reparation petition and it has been held that the Public Service Commission has no power or authority to award reparation in a complaint proceeding involving the reasonableness of existing or proposed rates; its power is limited to the question of the reasonableness of the rates at the time of its

investigation and to fix and prescribe the just and reasonable rate for the future. Centre Co. Lime Co. et al. v. P. S. C., 96 Pa. Superior Ct. 590; Alan Wood I. & S. Co. v. P. S. C., 97 Pa. Superior Ct. 1; Atlantic Refining Co. v. P. S. C. et al., 97 Pa. Superior Ct. 106; N. Y. & Pa. Co. v. N. Y. C. R. R., 267 Pa. 64, 110 A. 286.

The first action is to test the reasonableness of the rates charged; the second action is to obtain reparation for excessive payments of rates determined to be unreasonable and no action to recover the amount of the excess payments can be instituted until the first action is determined. Therefore, it necessarily follows that if the first action that can be taken by the complainant for an order of reparation is not until the rates have been declared by the commission to be unjust and unreasonable, the cause of action for said reparation payment does not accrue until the effective date of the order of the commission declaring the rates to be unreasonable. Whatever claims the consumers had for excessive charges were suspended and undetermined until the final order of the commission.

When dealing with a cause of action for reparations, we can not assume that the legislature had in mind the time of payments when it specifically provided that there could be no reparations until after the final order of the commission. The language is specific as to a cause of action while appellant's argument would necessarily result in causes of action dependent upon the speed with which the complaint was disposed of.

What is a cause of action? It is not easily defined and the authorities have laid down no thoroughly satisfactory and all-embracing definition. It has been said that a right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant, and that the facts which establish the

existence of that right and that delict constitutes the cause of action. 1 R. C. L. 313. Applied to a cause of action the term "to accrue" means to arrive; to commence; to come into existence; to become a present enforceable demand. Words and Phrases, 1st Series, Vol. 1, p. 101. A cause of action must be complete before an action can be commenced, and the subsequent occurrence of a material fact will not avail in maintaining it. 1 R. C. L. 337.

Our Supreme Court in Phila., B. & W. R. R. v. Quaker City F. M. Co., 282 Pa. 362, 367, 127 A. 845, has said the following: "To what extent, if any, did Congress intend the new rule to apply to rights of action already accrued? A cause of action accrues at the moment the party has a legal right to sue." At the time of the filing of the prospective tariff No. 5, there was a primary right on the part of the complainant to complain against what he regarded as an excessive rate but it had not yet been established that a wrong had been done the complainant until the order of the commission declaring the tariff to be unjust and unreasonable.

"By the express provisions of the statute nothing can be done toward redressing of the wrongs suffered through the exaction of unreasonable rates until the commission, after hearing, 'shall determine that any rates which have been collected ...... were ...... unreasonable.'" Centre Co. Lime Co. v. P. S. C., supra, 599. If nothing can be done toward redressing the wrongs suffered through the exaction of unreasonable rates until the commission, after hearing, shall determine that any rates which have been collected were unreasonable, how can it be said that the complainants had any cause of action or that the cause of action had accrued within the meaning of Section 5. In this connection we must not overlook the last paragraph of Section 5, Article V, which provides: "No

action shall be brought in any court on account of the wrongs or injuries referred to in this section, unless and until the commission shall have determined that the rate, regulation, ....... was unjust, unreasonable, ...... and, then, only to recover such damages as may have been awarded and directed to be paid by the commission in said order." The proceeding for reparation and for redress of wrongs and injuries suffered are all predicated upon the final determination of the question against which complaint has been made to the commission, showing clearly that whatever claims were to be made against the public service company were predicated upon some final determination of the question before the commission itself.

In the case of N. Y. & Pa. Co. v. N. Y. C. R. R. Co., 300 Pa. 242, 245, 246, 150 A. 480, the Supreme Court, in construing a provision of Art. V, Sec. 5 of the Public Service Act, said in part: "Hence, in accordance with the well-known rule that the time specified in a statute of limitations does not begin to run until there is an existing right to sue forthwith, the only fair interpretation of the clause under consideration must be to view it as if to read 'a suit for the enforcement of an (enforceable) order;'" and we so construe the cause of action under the words "cause of action accrued" to be intended to mean an enforceable cause of action.

We are persuaded that the language "cause of action accrued" refers to the effective date of the order of the commission declaring the rates unjust and unreasonable, at which time the consumer, by petition, could present his application for reparations.

We are not unmindful that appellant is supported in his position by the decision of the Public Service Commission in Cover v. Highspire Water Co., 5 Pa. P. S. C. 625, which decision relied upon Louisville Cement Co. v. Interstate Commerce Comm., 246 U. S.

638, which in turn followed Phillips Co. v. Grand Trunk Western Railroad Co., 236 U. S. 662. The Phillips case construed provisions of the Interstate Commerce Commission Act, under which act a complaint against the reasonableness of a rate and a petition for reparation can be joined in the same proceeding, which can not be done under our Public Service Act. The Interstate Commerce Commission has power to suspend a proposed increase in rates for a period of seven months, while under our Public Service Act the commission had no power at the time the complaint was filed in the instant case to suspend proposed rates. After proper notice the rate becomes effective and the consumer must pay. In determining whether the above authorities are controlling, we must examine the character and extent of the jurisdiction of the Interstate Commerce Commission and our Public Service Commission. The jurisdiction of the Interstate Commerce Commission is limited to common carriers, while that of our commission extends to all classes of public utilities, water, gas, electricity, steam, motor, rail, etc. These differences naturally require different rulings in dealing with questions which affect their authority and the remedies which the public have for the return of unjust rates collected. "Moreover, every statute must be construed according to the legislative intent, and nothing would be gained by discussing whether or not other statutes show the same intent, under the varying circumstances appertaining to them." N. Y. & Pa. Co. v. N. Y. C. R. R. Co., supra, 246.

In discussing the second and third questions, we adopt the following language of appellee's brief: "The construction of Art. 5, Sec. 5 which the appellant asks the court to adopt—namely that only the person or persons who sign the original complaint against proposed rates can recover the full amount of their excess payments and that persons who do not complain, can

recover only the excess payments made within two years prior to the date the reparation petitions are filed—would absolutely and arbitrarily deny a right of action for many excess payments, in every case in which the final order, determining the reasonableness of proposed rates, was made more than two years after the date of payment of the overcharges. Such construction would require, as a prerequisite to preserve a right of action to recover a common law property right, every consumer or patron of a utility company in this state to make and file a formal complaint against proposed rates.'' Such a construction would mean that in the event the Bell Telephone Company, serving large areas of the state, filed a new schedule of rates which increased the rates in effect, every patron and consumer of the company would have to file a complaint with the commission in order to recover the overpayment or excess charges. Clearly this is not the intent of the legislature which authorized the reasonableness of the rate to be determined by the commission, either upon complaint or upon its own motion. In the event that reasonableness of rate was being determined upon the motion of the commission, there is no necessity for an individual complaint, yet in the event that an order was made determining the rate to be unreasonable, no reparations could be ordered because no complaints had been made by the consumer or patron. The Public Service Commission was created not only for the protection of the service company but also for the consumer, and to say that after the commission had exercised its powers it had no authority to order reparation except to those who had filed complaints, would destroy the very purpose that investigation made by the commission was intended for. In the event that such a rule was required, thousands upon thousands of petitions would have to be filed when a single complaint could accom-

plish the same purpose. In the event that complaints had not been filed by thousands of its consumers, all the overcharges or excess payments would be retained by the service company. The order of the commission declaring that a proposed rate was unjust and unreasonable redounds to the benefit of every consumer who has paid the unreasonable rate, and the commission is the proper forum to present his petition for reparation, regardless of whether he joined as a complainant. To construe otherwise would impose an undue and unfair burden upon the public. No injury can be suffered by the service company under this construction as it is given notice either by an individual complaint or upon motion of the commission that the increase is being attacked. It is not a private suit between litigants, but a proceeding in which the public is vitally interested. To bind the public to a statutory limitation of two years from the time of excessive payment would be unjust as it has no control over the final determination of the issues. The larger the company, the longer would be the delay and the greater would be the number of consumers that would be affected. Recently we have had before us a water rate case affecting a large area of the Commonwealth that has been in controversy for more than five years, and is still finally undisposed of.

This interpretation leads to no injustice to the company who have had notice that its rates were attacked and that in the event of an adverse order it would be liable for excess rates collected, while an interpretation as contended for by appellant would result in injustice and inconvenience to the consuming public.

The present proceeding was instituted in the court below and argued in this court prior to the passage of the Act of June 3, 1933, P. L. 1526 which, by amendment to the Public Service Law, covers some of the questions involved in this issue but which we have not

242

considered in the determination of these questions. We are further constrained to state that the questions which have been adjudicated in the present issue apply only to rates which went into effect after a complaint had been filed and leaves the determination of questions as to rates which were in effect before the filing of the complaint until such time as they shall properly arise.

Judgment affirmed.

CUNNINGHAM, J., dissents.