Argued October 2, 1936.
The Pennsylvania Railroad Company and Reading Company have appealed from an order of the Public Service Commission sustaining two complaints of the *Page 560 
Diamond Glass Company that certain intrastate freight rates which it has paid the appellants were unjust, unreasonable, oppressive and extortionate, and fixing the extent of the unreasonableness.
The Diamond Glass Company manufactures glass containers at its plant on the Reading railroad at Royersford, Pa., and purchases glass sand in carload quantities at Mapleton, Pa., on the Pennsylvania. Shipments are made in box cars from Mapleton over the Pennsylvania to Harrisburg, a distance of 89 miles, and thence over the Reading to Royersford, a distance of 80 miles, or a total of 169 miles. Since July 1, 1935, the prescribed rate has been $1.80 per ton of 2,000 pounds. Prior to July 15, 1929, the rate had been $2.52 per ton, but was then so reduced that by June 30, 1932, (the earliest date with which we are particularly concerned) it was $2.40 per ton, plus emergency charges of 6 cents per ton, between June 30, 1932, and October 1, 1933, and 7% of the total freight charges between May 7, and June 30, 1935.
Within two years from the beginning of the period involved under this appeal, viz., on June 27, 1934, the Diamond Glass Company filed a complaint with the commission, at complaint docket No. 10237 of 1934, in which it stated appellants participated in the transportation of the sand purchased at Mapleton and had been charging it the $2.40 rate, and averred the rate so charged was excessive and unreasonable and in violation of Section 1(b) of Article II of the Public Service Company Law of July 26, 1913, P.L. 1374, 66 P. S. § 22; the prayer of the complaint was that the commission make a finding that the rate complained of was excessive and unreasonable and fix the extent to which it was excessive. A second petition to the same effect was filed by the glass company on July 31, 1935, to complaint docket No. 10865 of 1935, evidently for the *Page 561 
purpose of covering shipments up to July 1, 1935. Each complaint contained a prayer for reparation.
The proceedings were consolidated for hearing and resulted in a report and order by the commission, under date of March 31, 1936, in which it sustained the complaints and found that "the rate of $2.40 per net ton, plus emergency charges, charged for the transportation of glass sand, in carloads, from Mapleton to Royersford during the period June 30, 1932, to June 30, 1935, inclusive, was unjust and unreasonable, oppressive and extortionate to the extent that it exceeded $2.00 plus emergency charges based on that rate." There was testimony that during the specified period approximately 275 carloads, containing 14,982 tons, had been shipped. No award of reparation was made by the commission, but it was ordered that the proceeding "be set down for further hearing at a time to be designated, to ascertain what damages, if any, complainant has sustained." Appellants unsuccessfully sought a rehearing and have now appealed from the above action of the commission. Their appeals may be disposed of in one opinion.
In the case of Centre County Lime Company and Chemical LimeCompany, et al., v. Pub. Ser. Com., 96 Pa. Super. 590, this court had occasion to consider the distinction between complaints against existing rates under Section 3 of Article V of the statute, 66 P. S. § 492, and those against past rates under Section 5 of that Article, 66 P. S. § 511. It was pointed out that the proceedings under these sections are separate and distinct and that the findings on the issues involved in determining whether existing rates were then unjust and unreasonable, and would be for the future, furnished no basis for awarding or refusing reparation.
Later, in Centre County Lime Company v. Pub. Ser. Com. et al.,103 Pa. Super. 179, 157 A. 815, we had an appeal from an order of the commission refusing *Page 562 
reparation for alleged excessive freight rates paid in the past, although it had found those rates would be excessive and unreasonable for the future. In affirming the order of the commission, reference was again made to the distinction that proceedings under Section 3 are an exercise of the commission's quasi-legislative power to protect the public from future injury through the exaction of unreasonable rates, while proceedings under Section 5 are an exercise of its quasi-judicial function and have for their object the measuring and redressing of past injuries sustained by a private shipper. The proceeding now at bar is purely one by an individual consignee for the redress of injuries alleged to have been suffered through the exaction of unreasonable rates in the past.
No useful purpose would be served by a detailed discussion of the evidence. It consisted largely of the testimony of rate experts showing the history and development of rates for the transportation of sand from various districts and to many destinations, both within and outside of Pennsylvania, and the presentation of exhibits. For instance, it was shown that the rate from the Mapleton district to Pittsburgh, 167 miles, was $2.00 per ton as compared with $2.40 for the 169 miles to Royersford.
Appellants contend there was no competent evidence that any damages had been actually sustained by the complainant, within the meaning of Section 5 of Article V of the statute. The commission has not undertaken, as yet, to pass upon that question but has expressly stated in its order that, in accordance with the holding of this court in the second Centre County Lime Company case, supra, (p. 188), it intends to conduct a further hearing "to ascertain what damages, if any, complainant has sustained."
Considerable space has been devoted in the briefs to a discussion of the quantum and quality of evidence *Page 563 
necessary to support a finding under Section 5 that rates which have been collected in the past were "unjust and unreasonable," as compared with the evidence required under Section 3 to show that existing rates are unjust and unreasonable and would be for the future. As indicated by this court in the Centre County Lime Company cases, supra, it does not necessarily follow that a rate, which should be reduced for the future, was unreasonable in the past — particularly where it was "put into effect in good faith and maintained without challenge for a considerable length of time." In the first instance, the commission is required to use its best judgment with reference to prospective conditions, but in the latter there is no possibility of increase in traffic or opportunity for the readjustment of other rates. No hard and fast rule can be laid down. The commission, in the exercise of "that flexible limit of judgment" with which it is clothed, must in each individual case determine, under the particular facts there developed, whether past rates have been unreasonable to the extent of involving elements of legal oppression and extortion.
Upon examination of the testimony and exhibits in this case, our independent judgment is that the commission was justified in holding that the $2.40 per ton rate, so far as collected by appellants between a certain date, hereinafter considered and fixed, and July 1, 1935, was unreasonable within the meaning of Section 5, as interpreted by this court in the second Centre County Lime Company case (pp. 190-191), and to the extent fixed by the commission, but we do not agree with the finding that it was an unreasonable rate on June 30, 1932, — the beginning of the limitation period fixed by the commission in its order.
Although no award of reparation has been made, we deem it advisable, in order to avoid unnecessary litigation in the future, to consider the question as to the *Page 564 
period of time within which any claim for reparation must be confined in this case. The provision of the statute is, "No reparation . . . . . . shall be awarded by the commission unless the complaint or petition shall have been filed with it within two years from the time when the cause of action accrued." The complaints and the order of the commission are based upon the theory that the complainant may go back to June 30, 1932, or two years prior to the filing of the first complaint.
Appellants, while not admitting the rate was ever unreasonable, contend, and we think with justice, that in any event no cause of action for reparations accrued in this case prior to October 16, 1934. In other words, they argue that the period during which reparation might possibly be claimed did not, under any aspect of the case, begin on June 30, 1932, as found by the commission in its order, because they were legally justified in collecting the rate of $2.40 per ton, at least up to October 16, 1934.
Their contention is based upon the history of the rate as disclosed by the record. Prior to July 15, 1929, the rate from Mapleton to Royersford was $2.52 per ton. On that date the Interstate Commerce Commission reduced the interstate rate from Mapleton to Camden, N.J., and a corresponding reduction was made in intrastate rates. As we understand the record, the $2.40 rate then published and continuing in force on and after June 30, 1932, was in effect a commission-made rate.
Sometime prior to November, 1932, four complaints were heard by the commission, among which was the complaint of the Pennsylvania Glass Sand Company at complaint docket No. 8249. The complainant in that proceeding was engaged in the production and sale of sand at Mapleton and in its complaint attacked existing freight rates upon its product and sought to have *Page 565 
the commission declare that they were then unreasonable and would be for the future. In disposing of these complaints, reported under the title, United States Radiator Corp. et al., v.Pennsylvania R.R. Co. et al., 11 Pa. P.S.C. 624, the commission, inter alia, said:
"The scale of rates which in the companion cases, IndustrialSand Cases, 1930, 188 I.C.C. 99, [heard along with the state cases] is prescribed by the Interstate Commerce Commission for interstate movements would, if applied intrastate, result in an increase in the rates heretofore prescribed and herein under attack. The contention now made to this commission is that the rates now in effect are already too high and upon this contention we find that the rates on sand, in box cars, from the Mapleton district have not been shown to be unreasonable, except as hereinafter specifically determined."
The commission then found specifically that the rate from Mapleton to Brockway, via Curwensville, then $2.10 per ton, should be reduced to $1.80 and that two additional rates, not here involved, should also be reduced. Under date of November 14, 1932, the commission entered its order dismissing the complaint of the Pennsylvania Glass Sand Corporation at complaint docket No. 8249 together with the other complaints, except as above indicated. Appellants argue that this order was a finding that the $2.40 rate, here attacked, was not unreasonable, and that they were, therefore, fully justified in maintaining it at least until the proceeding about to be referred to.
On May 15, 1933, the commission reopened its order of November 14, 1932, dismissing the complaint of the Pennsylvania Glass Sand Corporation and reopened the other complaints dismissed by that order. In its report following the rehearing, the commission, referring to the complaint of the Pennsylvania Glass Sand *Page 566 
Corporation, described it as attacking "the rates on sand moving in box cars from complainant's plants in the Mapleton district . . . . . . as unreasonably high," and that the original complaint was dismissed because "the rates prescribed . . . . . . for interstate traffic from the same and competing districts would have, if applied intrastate, resulted in increases in rates." It also stated it had previously found that the rates originally complained of had not been shown to be unreasonable. From the second report of the commission it appears that the interstate cases included in Industrial Sand Cases of 1930 were also reopened for rehearing and that all of the cases "were heard jointly under the cooperative plan."
After considering the supplemental evidence developed on the rehearing, the commission, by an order dated October 16, 1934, directed the respondent carriers in the proceedings then before it, including the Pennsylvania Railroad Company and Reading Company, to file, post and publish, effective December 31, 1934, [subsequently extended to July 1, 1935] "rates for the transportation of sand in box cars, in carloads, from the Mapleton district to the destinations here in issue not to exceed the following mileage rates:
 Rates per ton of 2000 pounds Miles (Cents)
. . . . . .
175 miles and over 150 170
. . . . . . . ."
As we gather the history of the rate from the record, this was the first notice to either appellant that the commission considered the $2.40 rate unreasonable.
It is stated by the commission in its report in the present case that "the rates on glass sand from the Mapleton district to all points in Pennsylvania were before the commission" in the proceedings terminated *Page 567 
by its order of October 16, 1934. Although those proceedings contained no specific reference to the $2.40 rate from Mapleton to Royersford, that rate was at least approved by the commission in its order of November 14, 1932, and was not found to be unreasonable until the order of October 16, 1934. This seems to us to create a situation to which the following principle, announced by the Supreme Court of the United States in ArizonaGrocery Company v. Atchison T. S.F. Ry. Co., 284 U.S. 370, is applicable:
"Where the commission has upon complaint, and after hearing, declared what is the maximum reasonable rate to be charged by a carrier, it may not at a later time, and upon the same or additional evidence as to the fact situation existing when its previous order was promulgated, by declaring its own finding as to reasonableness erroneous, subject a carrier which conformed thereto to the payment of reparation measured by what the commission now holds it should have decided in the earlier proceeding to be a reasonable rate."
Ordinarily, a finding that a rate is unreasonable is to be treated as operating from the effective date specified in the order, rather than from the date of the order itself. Appellants invoke this general rule and contend they were justified in maintaining the $2.40 rate during the interim between October 16, 1934, and July 1, 1935, the effective date as extended. On the other hand, it is contended on behalf of the intervener that the principle of the Arizona Grocery Company Case should not be applied to a merely negative finding that a rate is not unreasonable. Under all the circumstances of this case, we are unable to agree fully with either contention.
Appellants had notice on October 20, 1934, that the commission, after full hearing, had, in the language of Section 5, "determined" that their rate of $2.40 was "unjust and unreasonable." They knew that under *Page 568 
such a finding the commission had "power and authority to make an order for reparation."
Regardless of the technical form of the order of November 14, 1932, finding appellants' rate not then unreasonable, we think it would be unjust to subject them to any liability for reparation because they maintained that rate until notice from the commission that it was excessive. But after the receipt of such notice, appellants should, under the circumstances here present, be held to have taken their chances with respect to liability for any damages actually sustained by the intervener.
Our conclusion is that the period for which reparation may be claimed in this case should begin with the date of notice that the rate was unreasonable and end with the date of its reduction; the order of the commission will be so modified.
The order appealed from is affirmed with the modification that its operation and effect shall be restricted to the period from October 20, 1934, to June 30, 1935.