Baltimore and Ohio Railroad Company et al.,
Appellants, *v.* Pennsylvania Public Utility
Commission et al.

Argued May 2, 1939.

Before

KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Windsor F. Cousins,* with him *George C. Doering, A. P. Donadio,* and *C. W. Meyer,* for appellants.

*Herbert S. Levy,* with him *Harry M. Showalter,* for appellees.

*William H. Neely,* for intervenors.

OPINION BY CUNNINGHAM, J., July 13, 1939:

The order of the Pennsylvania Public Utility Commission (successor to the Public Service Commission) appealed from by the carriers in this proceeding is dated July 11, 1938, and resulted from the filing on March 13, 1935, at Complaint Docket No. 10610, by Central Iron and Steel Co., Harrisburg, Pa., Phoenix Iron Co., Phoenixville, Pa., and Lukens Steel Co., Coatesville, Pa., (intervenors and consignees of many carloads of fire brick), of complaints looking toward the securing of reparation for the exaction by the carriers of alleged unjust, unreasonable, excessive and oppressive rates for the transportation of that commodity.

The complaints (consolidated for hearing) were filed under the provisions of Section 5 of Art. V. of "The Public Service Company Law" of July 26, 1913, P. L. 1374, 66 PS §511, and the shipments upon which reparation was sought were those made during the statutory period of two years preceding the filing of the complaints, viz., since March 13, 1933.

Evidence, including a number of exhibits, was presented at a hearing before an examiner. The present commission found upon the record presented to it that the rate of $2.95 per net ton collected during the above two-years' period upon shipments from points in the Clearfield-Mt. Union district to Harrisburg had been unreasonable and extortionate to the extent of 55 cts. per ton, and that the rate from the same points to Phoenixville and Coatesville of $3.15 per ton had been excessive and unreasonable to the extent of 30 cts. per ton.

Pursuant to the practice indicated by this court in *Centre Co. Lime Co. v. P. S. C. et al.*, 103 Pa. Superior Ct. 179, 157 A. 815, it directed that the matter be set down for further hearing, at a time to be designated, for the purpose of ascertaining the amount of damages sustained by each complainant.

The present proceeding was pending upon June 1, 1937, the effective date of the new "Public Utility Law" of May 28, 1937, P. L. 1053. That act repealed the above cited section of "The Public Service Company Law" governing reparations. Section 313 of Art. III, of the Act of 1937, relates to "Refunds" and supplies Section 5, Art. V. of the Act of 1913. Material changes made are, inter alia, that an order of reparation may be made "in any proceeding involving rates," if the commission shall determine that any rate received by a public utility was "unjust or unreasonable," and the commission "need not find that the rate complained of was extortionate or oppressive." As the petitions for reparation here involved were filed prior to the effective

date of the new law, and in connection with a pending proceeding under Section 3 of Art. V. of the old law, 66 PS §492, instituted for the establishment of reasonable rates for the future, which was terminated on November 25, 1936, (*Mfrs' Assn. of Lancaster v. Pennsylvania R. Co.,* 15 Pa. P. S. C. 495), this appeal must be considered and disposed of under the law as it stood at the time the petitions were filed.

The proceedings under Section 3 of Art. V, to which we have just referred, resulted in an order reducing the rates complained against in that proceeding and which had been in existence since 1928, and prescribing $2.40 per ton as the just and reasonable rate to be charged from and after November 25, 1936, from the Clearfield-Mt. Union district to Harrisburg, and $2.85 to Coatesville and Phoenixville—a reduction of 55 cts. in the Harrisburg rate and 30 cts. in the rate to Coatesville and Phoenixville.

It is clear that the effect of the order now appealed from, entered under Section 5 of Art. V. and involving only the exaction between March 13, 1933, and March 13, 1935, of rates alleged to have *then* been excessive and unreasonable, is to carry back to that period the reductions made in November, 1936, for the future.

The distinctions between proceedings under Section 3 of Art. V. and those under Section 5 were indicated at length in *Centre Co. Lime Co. et al., v. P. S. C.,* 96 Pa. Superior Ct. 590, 599, and *Centre Co. Lime Co. v. P. S. C.,* supra, [103 Pa. Superior Ct. 179, 189, 157 A. 815].

We now have before us a conclusive adjudication by the former commission, made in the exercise of its quasi-legislative powers under Section 3, finding that the respective rates of $2.95 and $3.15 were unjust and unreasonable on November 25, 1936, and would be subsequent to that date, and fixing $2.40 and $2.85 as the just and reasonable rates to be charged thereafter; and also an adjudication (from which the pending appeal

was taken) by the present commission, made in the exercise of its quasi-judicial powers under Section 5, that the rates condemned on November 25, 1936, were equally unjust and excessive during the period between March 13, 1933, and the same date in 1935.

If the rates charged during that period of two years had been established by the appellant carriers through tariffs voluntarily filed by them in the exercise of their corporate power to fix rates, the commission would have had jurisdiction to entertain the present complaints and petitions of the intervening consignees for reparation and to dispose of them upon their merits.

That, however, is not the situation here present. The complainants are met at the threshold of their case with the proposition that the rates collected from them during the specified two years were the *exact* rates determined, fixed and prescribed by an order of the former commission, dated August 31, 1928, (*Alan Wood Iron and Steel Co. v. Pennsylvania R. Co.*, 9 Pa. P. S. C. 319), as the maximum, just and reasonable charges to be demanded, charged and collected for the services here in question from and after the date of that order. This order remained in full force and effect until superseded by the order of November 25, 1936.

By the fourth assignment of error it is charged, inter alia, that the order appealed from is "unlawful and arbitrary in view of prior orders of the Public Service Commission prescribing the assailed rates as reasonable." As the sustaining of this assignment would end the case we turn to its consideration. Counsel for the commission admit the above stated facts, but, citing the provision of Section 1[f] of Art. II. of the Act of 1913, 66 PS §43, reading, "that no rate ...... which shall have been determined by the commission shall be changed or discontinued by the public service company ...... within a period of three years after such determination, without application to and the approval of the commission ......," contend the appellant carriers

were, as a matter of law, protected from such action as has been here attempted only for a period of three years from August 31, 1928. In other words, it is the position of the present commission that a utility which has been charging the rate specifically prescribed by the former commission may be punished for charging such commission-made rates during any two years between the expiration of the period of three years specified in the statute and the date of a subsequent order of the commission changing the rates. As applied to the present case, it is asserted the carriers may be compelled to make reparation for having collected between August 31, 1931, and November 25, 1936, the rates prescribed on August 31, 1928, and not changed in any way by the commission or the carriers, until November 25, 1936, because, in the opinion of the present commission, the rates fixed by its predecessor were too high. Boiled down, the present proposition of the commission is that, in the exercise of its quasi-judicial powers, it may decree reparation against the carriers for having obeyed a legislative order of the former commission, i. e., retroactively repeal the quasi-legislative enactment of its predecessor with respect to the reasonableness of the rates therein prescribed. A proposition so obviously contrary to generally established conceptions of justice should not be sustained unless we are compelled to do so by some very definite statutory enactment.

No support for the commission's position can be found in the above quoted provision of the statute. Manifestly, the legislative intent expressed by that provision was that following an investigation of the reasonableness of rates, by the commission upon its own motion or upon a complaint by a patron of the utility, there should be a period of repose during which no change in the rates prescribed by the commission should be made except with the express approval of the commission, obtained by showing a valid reason for

a modification of its adjudication. It was also intended that the utility should be at liberty after the expiration of that period to file new tariffs, subject of course to the peril of having any increase in the rates challenged by the commission or by rate payers. The appellant carriers did not avail themselves of that privilege but continued to charge the rates prescribed by the commission until those rates were reduced by the order of November 25, 1936.

Moreover, the order now appealed from is so clearly in conflict with the decision of this court in *Penna. R. R. Co. et al. v. P. S. C. et al.,* 125 Pa. Superior Ct. 558, 190 A. 367, (allocatur refused by the Supreme Court) that it should not have been made. No good purpose would be served by detailing the complicated facts in that case. It is sufficient, for present purposes, to say that on November 14, 1932, the commission declared that the freight rates in question in that case "had not been shown to be unreasonable." That decision was not disturbed by the commission until October 16, 1934, when, upon consideration of evidence then before it, the commission directed the carriers to file, post and publish a lower rate. We distinctly held that no reparation could be awarded for any portion of the period between November 14, 1932, and October 16, 1934. In disposing of the case we adopted and applied the principle announced by the Supreme Court of the United States in *Arizona Grocery Co. v. Atchison T. & S. F. Ry. Co.,* 284 U. S. 370. That case involved rates on sugar from California points to Phoenix, Arizona. In 1921 the Interstate Commerce Commission reduced the rates from $1.045 to 95.5 cts. per hundred pounds. The carrier subsequently made voluntary reductions to 84 cts. In 1925 the commission prescribed a rate of 71 cts. for the future, and in 1929 undertook, (a) to declare that all past rates had been unreasonable to the extent they exceeded 71 cts., and (b) to award reparations from 1922 upon the 71 ct. basis. In con-

demning this attempt Mr. Justice ROBERTS, speaking for the court, said:

"Where the commission has upon complaint, and after hearing, declared what is the maximum reasonable rate to be charged by a carrier, it may not at a later time, and upon the same or additional evidence as to the fact situation existing when its previous order was promulgated, by declaring its own finding as to reasonableness erroneous, subject a carrier which conformed thereto to the payment of reparation measured by what the commission now holds it should have decided in the earlier proceeding to be a reasonable rate.
. . . . . .

"As respects its future conduct, the carrier is entitled to rely upon the declaration as to what will be a lawful, that is, a reasonable rate; and, if the order merely sets limits, it is entitled to protection if it fixes a rate which falls within them. Where, as in this case, the Commission has made an order having a dual aspect, it may not in a subsequent proceeding, acting in its quasi-judicial capacity, ignore its own pronouncement promulgated in its quasi-legislative capacity and retroactively repeal its own enactment as to the reasonableness of the rate it has prescribed."

It is true, as pointed out by counsel for the commission, that the Interstate Commerce Act then in effect did not contain a provision similar to the period of repose provided for in our Act of 1913. The provision of the Interstate Commerce Act was that all orders of the I. C. C. should continue in force "until its further order . . . . . . unless . . . . . . suspended or modified or set aside . . . . . ." by the commission or a court of competent jurisdiction. But as no increase in rates was made by the carriers in the Arizona Grocery Company case or any change of any kind in the one now at bar, the distinction is immaterial. The principle clearly laid down is that when a regulatory body has prescribed a rate to be charged for the future by a public utility

and subsequently decides that such prescribed rate should be reduced, it cannot penalize the utility for collecting that rate during the period elapsing between the date of the order prescribing the rate and the date of the subsequent order reducing it.

Here, neither the former nor the present commission had any lawful authority to award reparation to the complainants for any part of the period beginning August 31, 1928, and ending November 25, 1936.

The statement in the report and order of the commission that this court held in *City of Phila. v. P. S. C.*, 84 Pa. Superior Ct. 135, citing *Coplay Cement Mfg. Co. v. P. S. C. et al.*, 271 Pa. 58, 114 A. 649, "that after the expiration of the three year period the rate ceases to be a commission-made rate" is a plain perversion of those decisions. Neither case decided anything of the kind. KELLER, J., (now President Judge) stated in the City of Philadelphia case that "had three years elapsed since the order of the commission the company could have increased its rate, effective on thirty days' notice, without application to the commission, and such increased rate would have been collected pending any objections filed against it, until it was determined by the commission whether it was just and reasonable." Such a rate would, of course, not be a commission-made rate—not because the three years' period had expired, but because the company had elected to file a rate of its own making. But where, as here, the utility, subsequent to the three years' period, makes no change in the rate of its own volition, the rate prescribed by the commission continues to be a commission-made rate until changed by the commission itself. There is nothing in the applicable statute, nor in any decided case brought to our attention, which compels us to hold that the commission had even a shadow of justification for its action in this case.

This conclusion renders it unnecessary for us to consider whether there is any competent evidence upon this

record to support the findings of the commission upon the merits of the complaints. We are all of opinion that the order of July 11, 1938, now before us upon this appeal, is based upon a clear "error of law." While this matter was before the commission a, mere reference by it to its own records would have disclosed that the rates alleged to have been unreasonable were the very rates which had been prescribed by the commission on August 31, 1928. This whole proceeding has been a useless waste of time, money and effort by both commissions.

Order reversed at the costs of the commission.