Cheltenham & Abington Sewerage Co., Appellant,
v. Pennsylvania Public Utility Commission.

Argued January 12, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*George Henry Huft,* for appellant.

*Samuel Graff Miller,* with him *Harry M. Showalter,* for appellee.

*Thomas A. Foulke,* for intervening appellees.

OPINION BY MR. JUSTICE PARKER, March 23, 1942:

This is an appeal by the Cheltenham & Abington Sewerage Company from an order of the Superior Court (146 Pa. Superior Ct. 274, 22 A. 2d 37) modifying an order of the Public Utility Commission (successor to the Public Service Commission) finding that the rates of that company were unreasonable, oppressive and extortionate from October 17, 1933, to January 1, 1937,

and directing that reparations should be awarded for that period. The principal matter to be determined in this appeal is the earliest date from which reparations may be allowed on account of any claims made in this proceeding.

On October 6, 1930, the Public Service Commission, acting on a complaint and after hearing, directed the company to file and publish a tariff for sanitary sewerage service to yield an annual gross revenue not in excess of $36,140.00: 10 Pa. P. S. C. 502. A tariff intended to produce that rate was filed and approved by the commission on April 13, 1931, to be effective July 1, 1931. The commission on December 11, 1934, on its own motion, by authority of Art. V, section 3 of the Public Service Company Law, Act of July 26, 1913, P. L. 1374, instituted a proceeding inquiring into the fairness, reasonableness and justness of the rates provided by the existing tariff. This resulted in an order as to future rates dated August 30, 1935, fixing the annual allowable revenue at a maximum of $27,700. On appeal the Superior Court *(Cheltenham & Abington S. Co. v. P. S. C.,* 122 Pa. Superior Ct. 252, 186 A. 149) by opinion filed July 10, 1936, increased the allowable annual gross revenue to $30,050.00. An allocatur was refused by this court. Thereupon the commission filed a report and order directing a new tariff to be filed effective January 1, 1937, in accord with its previous order as modified by the Superior Court. The company collected rates under the old tariff to that time.

On October 17, 1935, a complaint was filed with the commission by Benjamin H. Davis, et al., under Art. V, section 5 of the Public Service Company Law to recover reparations for damages alleged to have been sustained by reason of the collection by the company of rates set forth in the tariff effective July 1, 1931. The commission, after hearing, found that reparations should be awarded from October 17, 1933,* to January 1, 1937. On appeal.

---

* The statutory limit of two years prior to filing claim fixed by said §5.

the Superior Court held that the complainants were not entitled to receive compensation for a period prior to December 11, 1934, the date on which the proceedings to fix future rates were initiated by the commission. It is the contention of the appellant that since the rates collected by it were imposed by virtue of a commission-made rate no reparations may be awarded prior to the effective date of the new tariff, January 1, 1937; in short, that the complainants are not entitled to any reparations. We do not agree with either this contention or the position of the Superior Court, but are of the opinion that the right to reparations does not extend to a period prior to August 30, 1935, the date on which the commission filed its order directing a reduction in allowable gross revenue.

The rates prescribed by the commission in 1931 after hearing were "commission-made" rates as that term is used in utility law. The rates so fixed could not be other than commission-made rates for that agency fixed the rate base and after estimating an amount allowable for expenses of operation prescribed the gross annual revenue which the utility should collect. We do not regard it of any significance that the tariffs designed to yield the specified gross annual revenue were prepared by appellant and approved by the commission rather than that they were set by the commission in the first instance. This was a mere matter of procedure. While the company was permitted to prepare the schedule it was approved by the commission as being in accord with their prior order. The company consequently was entitled to rely upon the declaration of the commission as to what was a lawful and reasonable rate until a change was made by the commission acting in its quasi legislative capacity.

Mr. Justice ROBERTS in the leading case on the subject *(Arizona Grocery Co. v. Atchison, T. & S. F. Ry.,* 284 U. S. 370, 386-389, 52 S. Ct. 183) said: "When . . . the [Interstate Commerce] Commission declares a spe-

cific rate to be the reasonable and lawful rate for the future, it speaks as the Legislature, and its pronouncement has the force of a statute. This court has repeatedly so held with respect to the fixing of specific rates by state commissions, and in this respect there is no difference between authority delegated by state legislation and that conferred by congressional action. . . . As respects its future conduct, the carrier is entitled to rely upon the declaration as to what will be a lawful, that is, a reasonable, rate; and, if the order merely sets limits, it is entitled to protection if it fixes a rate which falls within them. Where, as in this case, the Commission has made an order having a dual aspect, it may not in a subsequent proceeding, acting in its quasi judicial capacity, ignore its own pronouncement promulgated in its quasi legislative capacity and retroactively repeal its own enactment as to the reasonableness of the rate it has prescribed." The same principle was followed in this state by the Superior Court: *Penna. R. R. Co. v. P. S. C.,* 125 Pa. Superior Ct. 558, 190 A. 367; *B. & O. R. R. Co. v. P. U. C.,* 136 Pa. Superior Ct. 517, 7 A. 2d 488.

There were important distinctions between proceedings to fix future rates under section 3 of Art. V of the Public Service Company Law and those for reparations under section 5 of the same article. "The object of a rate proceeding is to prevent a public wrong for the future; reparation redresses a private wrong of the past. The findings on the issues actually involved in the rate case furnished no basis either for awarding or refusing reparation; there has, as yet, been no specific finding that the rates were unreasonable in the past. By the express provisions of the statute nothing can be done toward the redressing of the wrongs suffered through the exaction of unreasonable rates until the commission, after hearing, 'shall determine that any rates which have been collected . . . .were . . . unreasonable,' et cetera. A question of reparation cannot properly be determined by the commission until it has been presented to it in the manner

prescribed by the act, nor should it be prejudiced, or the door closed against it, by a declaration in advance of a hearing": *Centre Co. Lime Co. v. P. S. C.,* 96 Pa. Superior Ct. 590, 599; 103 Pa. Superior Ct. 179, 157 A. 815. Also see *New York & Penna. Co. v. N. Y. C. R. R. Co.,* 267 Pa. 64, 110 A. 286. Nevertheless a commission-made rate furnishes the applicable law for the utility and its customers until a change is made by the commission. The utility was entitled to rely on the order of 1931 until August 30, 1935, but thereafter might be liable for reparations.

At what date did the tariff of 1931 cease to protect the company from claims for reparations? We are of the opinion that protection extended to August 30, 1935, the date when the commission, acting under the authority granted to it by the legislature, declared that the former controlling rates were unreasonable and should be reduced. The appellant then knew that the commission after full hearing had determined that the rates were too high. It knew that the legislature had delegated to the commission power and authority to act for it and make that determination as well as the power to make an order for reparations. In prior decisions the Superior Court properly so held: *Penna. R. R. Co. v. P. S. C.,* supra; *B. & O. R. R. Co. v. P. U. C.,* supra.

The company, appellant, argues that since the order of the Public Utility Commission made August 30, 1935, was appealed to the Superior Court and was modified by that court on July 10, 1936, and the tariff pursuant to that order was not effective until January 1, 1937, (application for an allocatur in the meantime having been made to and refused by the Supreme Court), the old tariff of 1931 entitled it to collect the rates fixed by it until the new tariff was effective. The Superior Court properly rejected that contention. If that theory is sound the complainants would be deprived of any right to claim reparations. It was the Public Service Commission to whom the legislature delegated the authority to

determine and fix just and reasonable rates to be charged by certain utilities. In acting under that authority the commission performed a quasi legislative function and its decision, as in all rate cases, is in effect an enactment which remains the law until it is changed by the legislature acting directly or through its agent the commission. Consequently, when the commission determines an existing rate to be unjust and unreasonable that change has the same effect as any other change in the law by the legislature. The mere fact that the courts may review decisions of the commission does not affect the fact that there has been an actual change in the law insofar as it affects the particular utility. The review of orders of the commission by the courts is a judicial function whereby it is determined whether the commission has acted within its delegated powers and within the constitution.

When the commission on August 30, 1935, determined that the rates were unjust and unreasonable that constituted a new enactment fixing the relative rights of the utility and its customers. So far as the decision of the commission was lawful it remained in force as of August 30, 1935. On that date the utility had notice that if it continued to collect for service under the old tariff it might be called upon to account by way of reparations. The mere fact that the order was subject to review did not affect that result. The situation is comparable to that which exists when the constitutionality of an act of the legislature is challenged by an appeal to the courts. If the act is sustained it remains effective as of the date originally fixed by the legislature. Just so here, the protection which the company enjoyed under the tariff of 1931 ceased as of August 30, 1935. The delay necessitated by appeals to the courts, often covering a long period, should not be allowed to prejudice the rights of customers of the utility unless the law demands such an interpretation, when in the end a change is sustained as was the case here.

The Superior Court, however, in part sustained the view of the commission and held that the initiation of an

investigation by the commission of the justness and reasonableness of the rates constituted a change and served as a warning to the utility by reason of special circumstances to which we have not heretofore referred.

When the rates were fixed by the commission in 1930 appellant had a contract with Cheltenham Township for sewage disposal calling for a fixed sum per year plus a proportionate part of any amount the township might have to pay the City of Philadelphia for conveyance of sewage through the latter's sewers. The exact obligation under this contract being in doubt, the commission in its opinion stated: "Under these circumstances the amount claimed by respondent, $10,940, will be allowed until the exact amount is determined, at which time a rate adjustment, if necessary, can be made." It developed that the allowance was $3,000 too high. Nothing was done by the commission until 1934 when it initiated the proceeding to determine the fairness and justness of the appellant's rates. At that time the whole subject of rate base and allowable expenses was investigated and the final result reached was dependent only in part upon a reduction in the amount allowable for payment to Cheltenham Township for disposal of sewage.

The commission in 1931 not only made an order intended to furnish a basis for a tariff but it joined the utility in prescribing such a tariff and allowed it to remain unchanged for about three and one-half years. The tariff became binding on utility and customer until circumstances required a reëxamination of the subject and a conclusion was reached or the company filed a new tariff. It might have developed that the rates fixed were too high or too low and either the customer or the utility might profit by the errors of judgment. It is true that here experience demonstrated that the rates were too high but that is not an unusual situation. It is inevitable that in any rate making proceeding few factors can be determined with exactness and when an error appears it may affect adversely either customer or utility. The

commission merely referred in its report to the item of rental to be paid to the township without pretending to make any specific reservation of the matter. It recited the fact that a change on that account might or might not be necessary. When the commission did institute a new investigation, it did not confine its attention to the actual amount paid for rental but explored the entire field usually covered in rate making inquiries. The result of the proceeding was that the annual allowable revenue was reduced in an amount approximately double the excess collected for rental. Insofar as the change arose from other matters than excess on account of rental the situation was just the same as in other cases involving a commission-made rate. Rates having in other respects the attributes of commission-made rates do not lose their effect as such by an indefinite expression of opinion that some of the factors on which they are based are variable and may not stand a pragmatic test, a situation which is always implied.

To sustain the position of the Superior Court would be to give a retroactive effect to the order of August 30, 1935, without notice to the utility. The mere institution of an inquiry did not constitute notice that a departure would be made from the tariff established by the commission in its quasi legislative capacity. The situation is comparable to the introduction of a bill in the legislature. It may or may not become a law. Here the first notice to the utility that the rates were too high was on August 30, 1935.

The order of the commission must be modified by fixing August 30, 1935, as the earliest date from which the Cheltenham & Abington Sewerage Company is liable for reparations.

The decree of the Superior Court is affirmed as modified, the costs of this appeal to be divided equally between the appellants and the complainants.