## Cheltenham & Abington Sewerage Co., Appellant v. Pennsylvania Public Utility Commission.

60

Argued March 12, 1946. Before BALDRIGE, P. J., RHODES, HIRT, DITHRICH, ROSS and ARNOLD, JJ. (RENO, J., absent).

*George Henry Huft,* for appellant.

*Charles E. Thomas,* with him *Samuel Graff Miller, Vincent P. McDevitt* and *James H. Duff,* Attorney General, for appellee.

OPINION BY BALDRIGE, P. J., April 17, 1946:

The Cheltenham and Abington Sewerage Company is engaged in operating a sanitary sewerage collection system in a portion of Abington and Cheltenham Town-

ships, Montgomery County. It has appealed from an order of the Pennsylvania Public Utility Commission directing it to refund to patrons served during the period from August 30, 1935, to December 31, 1936, the amounts listed in the schedule, made a part of the order, aggregating $10,636.81, with simple interest at 6% from the date of the excessive payments.

This case has a long history, having its inception in 1930 when the Public Service Commission, acting on a complaint, directed the company·to file and publish a tariff for sanitary sewerage service to yield an annual gross income of not more than $36,140. On December 11, 1934, the commission on its own motion instituted a proceeding inquiring into the fairness, reasonableness and justness of the rates provided by that tariff. On August 30, 1935, it reduced the annual revenue allowable to a maximum of $27,700. On appeal (*Cheltenham. and Abington Sewerage Co. v. Public Service Commission*, 122 Pa. Superior Ct. 252, 186 A. 149) we directed that the findings, valuations, and rates be reformed to allow a gross yearly income of $30,050. The commission made an order directing appellant to file a new tariff in accordance with our opinion, to become effective January 1, 1937. On October 17, 1935, while an appeal from the order of August 30, 1935, was pending, Benjamin H. Davis, an individual patron of the appellant, and the ·Glenside Home Protective Association, Inc., a Pennsylvania corporation of the first class, assignee of and attorney-in-fact for various other patrons, filed a complaint alleging that the rates imposed were unjust and unreasonable, and asking that reparations be awarded. The commission held that the rates charged were unreasonable, oppressive, and extortionate from October 17, 1933, until January 1, 1937, and that reparations should be awarded for that period. We affirmed the order with a modification that its operation and effect should be restricted to the period from December 11, 1934, to January 1, 1937 (146 Pa. Superior Ct. 274, 22

A. 2d 37). The Supreme Court allowed an appeal (344 Pa. 366, 25 A. 2d 334) and affirmed our order subject to modification that August 30, 1935, instead of December 11, 1934, was the earliest date the sewerage company was liable for reparations. The Supreme Court of the United States allowed an appeal taken by the sewerage company from the Pennsylvania Supreme Court's decision. That was dismissed on October 12, 1942, (317 U. S. 588) for want of final judgment. On February 4, 1943, another petition for intervention and reparations was filed. The commission thereafter held several hearings and awarded individual reparations to all patrons of the sewerage company during the period fixed by the Supreme Court. This appeal followed.

The first position taken by the appellant is that it is not liable for any reparations until January 1, 1937, as it was fully justified in continuing to collect its existing rates up to that date. It is unnecessary to enter into any discussion of that contention, for, as above noted, the period during which reparations were allowed was considered and definitely determined by the Supreme Court. Of course we will not attempt to depart from that decision.

The next point raised by the appellant is that as the original petition for reparations was filed October 15, 1935, when article V, section 5, of the Public Service Act of July 26, 1913, P. L. 1374, 66 PS §511, was in force, its terms govern this proceeding. It provides that the commission shall have the power and authority to make reparations "to any such complainant, petitioner . . . within a reasonable time specified in the order" and that no reparations shall be awarded "unless the complaint or petition shall have been filed with it within two years from the time when the cause of action accrued." Appellant argues that under that section reparations cannot be granted legally to other than a complainant, who has filed a petition within the period named therein, and that the commission erred in applying section 313 of the

Public Utility Act of May 28, 1937, P. L. 1053, 66 PS §1153(a). The pertinent portion of that section reads: "Any order of the commission awarding a refund shall be made for and on behalf of *all* patrons subject to the same rate of the public utility." (Italics supplied). We pointed out in the former appeal (146 Pa. Superior Ct. 274, 22 A. 2d 37) that the approved practice in conducting reparation complaints is in two steps: ". . . first, hearing and determining whether the rate paid in the past was unjust or unreasonable, and, second, hearing and determining the individual claims for refund of both *complainant and noncomplainant patrons* of the utility . . . If reparations are ordered nothing which subsequently transpires before the commission will eliminate the obligation so declared, unless it happens that every patron claiming a refund either can be shown delinquent in payment of the rates charged or is met with an equivalent counterclaim due the utility." (Italics supplied). We previously had given expression to the same view in *Manning et al. v. Newville Water Company*, 111 Pa. Superior Ct. 229, 169 A. 254.

The portion of section 313 to which we have referred is procedural and the commission, therefore, gave effect in the pending litigation to the prevailing law in so far as possible, as we did in the last appeal (146 Pa. Superior Ct. 283, supra) where we held it was our duty to give effect to section 1107 of the Public Utility Law, altering the scope of our review of rate cases, and that was in accordance with legislative sanction. Section 1404 of the Act of 1937, 66 PS §1534, provides: "All litigation, hearings, investigations, and other proceedings whatsoever, pending under any act repealed by this act, shall continue and remain in full force and effect, and *may be continued and completed under the provisions of this act* . . ." (Italics supplied). Such a retroactive application concerning procedural matters is not unconstitutional as there is no vested right in any specific type of proceeding: *Lewis v. Penna. R. R. Co.*, 220 Pa. 317, 322, 69 A. 821.

In *Pennsylvania Power and Light Company v. P. S. C.,* 128 Pa. Superior Ct. 195, 200, 193 A. 427, we stated: "Procedure is a matter of statutory regulation, and, unless prevented by the Constitution, the legislature may alter it at will, provided the obligations of contracts are not impaired: . . . Kuca v. Lehigh Valley Coal Co., 286 Pa. 163; . . . Kunze v. Duquesne City, 126 Pa. Superior Ct. 43, 47, 48." See, also, *Cairns v. Spencer et al.,* 87 Pa. Superior Ct. 126.

The appellant cites *Baltimore and Ohio R. R. Co. v. Pennsylvania Public Utility Commission,* 136 Pa. Superior Ct. 517, 7 A. 2d 488, as supporting its contention that the Act of 1913 is the applicable statute in this proceeding. The complainants there, seeking reparation, instituted a proceeding prior to the passage of the 1937 statute. We had held in an opinion filed February 26, 1937, in *Pennsylvania Railroad Co. et al. v. Pennsylvania Public Service Commission et al.,* 125 Pa. Superior Ct. 558, 190 A. 367, that under the 1913 statute it was the duty of the commission to determine whether the past rates had been unreasonable to the "extent involving elements of legal *oppression and extortion.*" (Italics supplied). After that opinion was published the Act of 1937, supra, was passed. It provided that "the commission need not find the rate complained of was extortionate or oppressive." The quality of the proof to establish liability for reparation was involved in the *P. R. R.* case. We held that as the petition was presented prior to the effective date of the new law the appeal came under the law as it stood at that time. That is not this case where we are determining whether the evidence established the parties entitled to reparations after the appellant has been held liable to pay them.

The appellant asserts that there is no evidence to prove, in accordance with the requirements of article V, section 5, and article VI, section 10 of the Public Service Act, that damages have been sustained by the petitioners. At the meeting held on January 21, 1943,

the counsel for this appellant stated that he and the counsel for the complainants had agreed, instead of spending days taking testimony, that his client would prepare a statement of the names of the complainants, etc., which would contain such information that would enable the commission to determine the exact amount of reparation each of the complainants is entitled to. As that statement was not produced, the commission directed an accountant on its staff to make an examination of the appellant's records to ascertain the basic facts. That was done and they were included in a schedule of reparations payable, which was admitted in evidence and attached to the commission's order. It showed the total amount of reparations of $10,636.81. Neither that sum, nor the component amounts, was questioned. The appellant did except, however, to the names of some 71 individuals listed as entitled to reparations and submitted corrections which were duly made. All the patrons of the company during the reparation period were entitled to recover whether complainants or non-complainants. The schedule prepared as a result of an examination of the books afforded sufficient evidence for the commission to find the patrons entitled to, and the amount of, the reparations. Furthermore, proof of payments of the excessive rates is evidence of the damages sustained: *Allegheny Steel Co. v. New York Cent. R. Co. et al.*, 324 Pa. 353, 188 A. 332.

The last position taken is that the commission exceeded its authority in attempting to compel the appellant to correct its patron ledger and to revise its system of notation therein so that it may in the future properly reflect its transactions. This part of the order followed after the commission's representative had examined the records, which were found to be deficient. Section 504 of the Public Utility Act of 1937, supra, 66 PS §1214, provides: ". . . every public utility shall keep such books, accounts, papers, records, and memoranda, as shall be required by the commission . . ." Section 902, 66 PS

§1342, provides: ". . . the commission shall have full power and authority . . . to . . . carry out, by its regulations, orders, . . . all and singular the provisions of this act, and the full intent thereof; . . ."

The order appealed from is affirmed at appellant's costs.